## AMENDED TRANSMITTAL FORM

TO:          U.S. DISTRICT COURT, LLOYD D. GEORGE U.S. COURTHOUSE
             333 Las Vegas Boulevard South, Las Vegas, NV 89101

FROM:        BANKRUPTCY COURT FOR THE DISTRICT OF NEVADA -SOUTHERN
             DISTRICT OFFICE NO. 0978/2

CASE NAME:   THE LITIGATION TRUST OF THE RHODES COMPANIES LLC, ET
             AL., Plaintiff(s) vs. JAMES M. RHODES, ET AL, Defendant(s)

US DISTRICT COURT  NO.:          12-cv-01272-MMD-VCF

BANKRUPTCY NO:                   09-14814-LBR

ADVERSARY NO:                    12-01099-LBR

BANKRUPTCY JUDGE:                LINDA B. RIEGLE

DATE OF REPORT OF FINDINGS AND RECOMMENDATIONS:  07/26/2013

DATE OF ENTRY OF ORDER:          07/26/2013

DATE BANKRUPTCY FILED:           03/31/2009

DATE TRANSMITTAL OF THE WITHDRAWAL OF THE REFERENCE:   4/24/2013

DATE OF TRANSMITTAL:             08/01/2013


                                 S/ MELISSA R. BREAREY_____
                                 DEPUTY CLERK



_____
Honorable Linda B. Riegle
United States Bankruptcy Judge

**Entered on Docket**
**July 26, 2013**

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

* * * * * *

| | | |
|---|---|---|
| In re: THE RHODES COMPANIES, LLC | ) | BK-S-09-14814-LBR |
| aka "Rhodes Homes," et al., | ) | (Jointly Administered) |
| | ) | |
| Reorganized Debtors | ) | |
| _____ | ) | Chapter 11 |
| THE LITIGATION TRUST OF THE | ) | Adv.:#12-1099-LBR |
| RHODES COMPANIES LLC, et al | ) | |
| | ) | |
| Plaintiff | ) | District Case 2:12-cv-01272-MMD |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES M RHODES, JOHN C RHODES, | ) | Date:  May 7, 2013 |
| SEDORA HOLDINGS LLC, SAGEBRUSH | ) | Time: 1:30 p.m. |
| ENTER. INC., GYPSUM RESOURCES, LLC | ) | |
| TRUCKEE SPRINGS HOLDINGS INC., | ) | |
| JOHN C. RHODES, TRUSTEE OF THE | ) | |
| JAMES M. RHODES DYNASTY TRUSTS I | ) | |
| AND II, TOCK LP, AMERICAN LAND MGMT. | ) | |
| LLC, SOUTH DAKOTA CONSERVANCY LLC, | ) | |
| MERIDIAN LAND CO., LLC, RHODES | ) | |
| RANCH LLC, HARMONY HOMES INC., | ) | |
| NORTH 5TH LLC, FARM HUALAPAI LLC, | ) | |
| HARMONY 2 LLC, HAYDEN SPRINGS | ) | |
| PARTNERS LLC and TROPICAL SANDS LLC | ) | |
| | ) | |
| Defendants | ) | |
| | ) | |
| JAMES M. RHODES, SAGEBRUSH ENTER., | ) | |
| INC., JOHN C. RHODES, TRUSTEE OF THE | ) | |
| JAMES M. RHODES DYNASTY TRUSTS I | ) | |
| AND II, AND RHODES RANCH, LLC | ) | |
| | ) | |
| Third-Party Plaintiffs | ) | |

1

1  vs.                                               )
                                                     )
2  CREDIT SUISSE AG, CREDIT SUISSE                   )
   GROUP AG, CREDIT SUISSE HOLDINGS                  )
3  (USA), INC., CREDIT SUISSE (USA), INC.            )
   CREDIT SUISSE SECURITIES(USA),LLC,                )
4   CUSHMAN &WAKEFIELD OF                            )
   NEVADA, INC., CUSHMAN OF TEXAS,                   )
5  INC. & CUSHMAN & WAKEFIELD, INC.                  )        )
                                                     )
6            Third-Party Defendants                  )
   _____        )

7

8      **REPORT AND RECOMMENDATION CONTAINING PROPOSED FINDINGS
   AND RECOMMENDATIONS ON CUSHMAN & WAKEFIELD'S MOTION TO DISMISS
9            AND CREDIT SUISSE'S MOTION TO DISMISS**

10          This Report and Recommendation is made to the Honorable Miranda M. Du pursuant to 28

11  U.S.C. §157(c)(1) and FED. R. BANKR. P. 9033. Before the court is the Motion to Dismiss filed by

12  Cushman & Wakefield, Inc., Cushman & Wakefield of Texas, Inc., and Cushman & Wakefield of

13  Nevada (collectively the "Cushman & Wakefield Entities")(Doc. No. 232). Also before the court

14  is the Motion to Dismiss filed by Credit Suisse AG, Cayman Islands Branch, Credit Suisse

15  Securities (USA) LLC, Credit Suisse Holdings (USA), Inc., Credit Suisse (USA), and Credit

16  Suisse AG, New York Branch (collectively "Credit Suisse")(Doc. No. 229).

17          For the reasons explained in this Report, the court recommends that the Motion to

18  Withdraw the Reference filed by the Cushman & Wakefield Entities be granted, and that the

19  Motion to Dismiss of the Cushman & Wakefield Entities be heard by the District Court because of

20  the questionable authority of the bankruptcy court to make proposed findings and conclusions on

21  the substantive matters raised in their motion. This court also recommends that the decision on

22  Credit Suisse's Motion to Dismiss be deferred until the District Court rules on a pending Motion

23  to Withdraw the Reference that has been filed by the Cushman & Wakefield Entities and its

24  pending Motion to Dismiss.

25

26                                            2

1

**Background**

2        The Rhodes Companies, LLC and certain of its affiliates (the "Debtors")[1] filed chapter 11

3 petitions on March 31, 2009 and April 1, 2009.[2] The plaintiff is the Litigation Trust of the Rhodes

4 Companies, LLC (the "Trust"), which was created pursuant to the Third Amended Modified Plan

5 of Reorganization for the Rhodes Companies (the "Plan").[3] Under the Plan, the Trust obtained the

6 right to enforce the Debtors' causes of action,[4] and it filed a 16-count complaint on May 11, 2012

7 alleging mostly fraudulent transfer-based claims.[5] A core allegation in the Litigation Trust's

8 complaint is that James M. Rhodes and certain of his related entities caused the Rhodes

9 Companies to enter into a $500 million credit facility ("$500MM Credit Facility") for the benefit

10 of James Rhodes and his entities, thereby rendering them to be over-leveraged and insolvent.

11 Those claims are now pending in the adversary proceeding initiated by the Litigation Trust.

12        On June 29, 2012, a Motion to Withdraw the Reference of the adversary proceeding was

13 filed.[6] The District Court denied the motion, ruling that the bankruptcy court would hear the pre-

14 _____

15       [1]The debtors are Heritage Land Company, LLC, Rhodes Companies, LLC; Rhodes Ranch
General Partnership; Tick, LP; Glynda, LP; Chalkline, LP; Batcave, LP; Jackknife, LP;
16 Wallboard, LP; Overflow, LP; Rhodes Ranch Golf and Country Club; Tuscany Acquisitions,
LLC; Tuscany Acquisitions II, LLC; Tuscany Acquisitions III, LLC; Tuscany Acquisitions IV,
17 LLC; Parcel 20 LLC; Rhodes Design and Development Corp.; C&J Holdings, Inc.; Rhodes
Realty, Inc.; Jarupa LLC; Elkhorn Investments, Inc.; Rhodes Homes Arizona, LLC; Rhodes
18 Arizona Properties, LLC; Tribes Holdings LLC; Six Feathers Holdings, LLC; Elkhorn Partners;
Bravo Inc.; Gung-Ho Concrete, LLC; Geronimo Plumbing, LLC; Apache Framing, LLC; Tuscany
19 Golf Country Club; and Pinnacle Grading, LLC.

20       [2]The cases were ordered to be jointly administered in April 2009. BK-S-09-14814 Doc.
21 No. 22.

22       [3]BK-S-09-14814 Doc. No. 1013, Article IV, ¶ O, p. 29.

23       [4]BK-S-09-14814 Doc. No. 1013, Article IV, ¶ O, p. 29; Exhibit I to Doc. No. 713 ¶ 6.1.

24       [5]Doc. No. 1.

25       [6]BK-S-09-14814 Doc. No. 1721.

26

trial motions and present reports and recommendations to the District Court.[7]

Now, James Rhodes, Sagebrush Enterprises, John C. Rhodes Trustee of the James M. Rhodes Dynasty Trust I, John C. Rhodes Trustee of the James M. Rhodes Dynasty Trust II, and Rhodes Ranch LLC (collectively the "Third-Party Plaintiffs") have filed a Third-Party Complaint against the Cushman & Wakefield Entities and against Credit Suisse. The Third-Party Complaint is pled almost entirely in the alternative. The Third-Party Complaint alleges this:

> [I]n the unlikely event it is determined that the terms of the $500 MM Credit Facility positioned the Borrowers and other collateral-pledging, obligation-guaranteeing entities in the Rhodes Homes enterprise to fail, then Credit Suisse, for the roles it played in the $500MM Credit Facility, is liable for all or part of the Litigation Trusts's claims against the Third-Party Plaintiffs."[8]

No action has been commenced by the Liquidating Trust against the Cushman & Wakefield Entities or Credit Suisse. On April 8, 2013, the Cushman Entities filed a Motion to Withdraw the Reference.[9] Credit Suisse has not moved for a withdrawal of the reference. Both the Cushman & Wakefield Entities and Credit Suisse have filed motions to dismiss.

### Cushman Entities' Motion to Dismiss

The Third-Party Complaint asserts three causes of action against the Cushman & Wakefield Entities for negligence, equitable indemnity, and contribution for appraisals allegedly prepared by them. All are pled in the alternative. The causes of action for equitable indemnity and contribution seek relief based upon the possibility that if James Rhodes and certain of his non-debtor affiliates (the "Rhodes Defendants") are found liable in the Litigation Trust's action, then the Cushman & Wakefield Entities should be liable to the Rhodes Defendants.

---

[7]BK-S-09-14814 Doc. No. 1735.

[8]Third-Party Complaint and Demand for Jury Trial," Doc. No. 178.

[9]Doc. No. 236. The court notes that on account of a clerical error, however, the matter was not assigned to Judge Du.

4

1    The Cushman & Wakefield Entities argue in their Motion to Dismiss that "the Court does

2    not have subject matter jurisdiction."[10] It is unclear to this court whether the Cushman &

3    Wakefield Entities are arguing that the **bankruptcy court** does not have subject matter jurisdiction,

4    or whether the **District Court** lacks subject matter jurisdiction. Clearly, after *Stern v. Marshall*,

5    ___ U.S. ___, 131 S.Ct 2595 (2011), as determined by the District Court in its Order,[11] the

6    bankruptcy court can enter only proposed findings and conclusions with respect to the matters

7    contained in the proceeding between the Litigation Trust and the Rhodes Defendants. *See also*, *In*

8    *re Bellingham Ins. Agency*, 702 F.3d 553 (2012), *cert. granted*, 2013 WL 3155257

9    (2013)(bankruptcy courts have authority to enter proposed findings and conclusions in fraudulent

10   conveyance proceedings subject to de novo review by the district court). In none of these

11   decisions, however, was the issue of subject matter jurisdiction raised.

12   The jurisdiction relied upon by the Third-Party Plaintiffs in the Third-Party Complaint is

13   that given by 28 U.S.C. 1367.[12] In order for the district court to exercise supplemental jurisdiction,

14   it must be shown that the claims are "so related to claims in the action within such original

15   jurisdiction that they form part of the same case or controversy under Article III of the United

16   States Constitution." 28 U.S.C. § 1367 provides, in part:

17   (a) Except as provided in subsections (b) and (c) or as expressly
18   provided otherwise by Federal statute, in any civil action of which
     the district courts have original jurisdiction, the district courts shall
19   have supplemental jurisdiction over all other claims that are so
     related to claims in the action within such original jurisdiction that
     they form part of the same case or controversy under Article III of

20

21

22   [10]Cushman Entities Motion to Dismiss, Doc. No. 232, p.7, line 19.

23   [11]BK-S-09-14814, Doc. No. 1735. The District Court, in its Order, ruled that it is the
     proper venue for trial of the numerous non-core claims of the Litigation Trust, not the bankruptcy
24   court, even though the bankruptcy court could adjudicate the pre-trial motions

25   [12]Complaint, Doc. No. 178, ¶ 24.

26                                    5

the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

At first blush, one might assume that the bankruptcy court could enter proposed findings and conclusions with respect to this issue as would a magistrate judge. However, the authority given to bankruptcy judges to hear matters subject to review by the District Court is not as broad as that given to magistrate judges. Under 28 U.S.C. § 157, bankruptcy judges may hear a proceeding that is not a core proceeding but is otherwise ***related to a case under title 11.*** In such a proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the District Court, and any final order or judgment shall be entered by the District Court. Thus the bankruptcy court may only make proposed findings and conclusions in a rather narrow category of cases. In contrast, magistrate judges may conduct hearings on a broad range of dispositive pretrial motions, subject to submitting their findings to the District Court. *See* 28 U.S.C. § 636(b)(1)(B).

Here, the third party complaint is not in any manner related to a case under title 11. In the Ninth Circuit the test to determine whether a civil proceeding is "related to" a bankruptcy case is:

> [W]hether the outcome of the proceeding could conceivably have any effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

*In re Feitz,* 852 F.2d 455, 457 (9th Cir. 1988)(adopting the definition in *Pacor, Inc. v. Higgins*, 743 F.2d 984 (3rd Cir. 1984).[13]

Accordingly, this court recommends that the Cushman & Wakefield Entities' Motion to Withdraw the Reference be granted and that all substantive matters be determined by the District Court judge, subject to the judge's right to designate matters to a magistrate.

---

[13]This court makes no proposed finding about whether or not the Third-Party Complaint meets the test of 28 U.S.C. § 1367.

*Credit Suisse's Motion to Dismiss*

This court recommends that a determination of Credit Suisse's Motion to Dismiss be deferred until the District Court rules on Cushman & Wakefield's Motion to Withdraw the Reference and its Motion to Dismiss. While Credit Suisse has impliedly consented to review by the bankruptcy court of the Motion to Dismiss, the Third-Party Complaint against the Cushman & Wakefield Entities is so entwined as to make the matters difficult to segregate if Cushman's Motion to Dismiss is not granted. If the Motion to Dismiss of the Cushman & Wakefield Entities is not granted, it is recommended that the Third-Party Complaint against Credit Suisse should also be heard and determined by the District Court.

**Recommendation**

For all of the reasons explained above, **IT IS RECOMMENDED** that the Motion to Withdraw the Reference of the Cushman & Wakefield Entities be granted and that all substantive matters be determined by the District Court. This court further **RECOMMENDS** that the decision on Credit Suisse's Motion to Dismiss be deferred until the District Court rules on Cushman & Wakefield's Motion to Withdraw the Reference and its Motion to Dismiss. It is further recommended that the Third-Party Complaint be severed pursuant to FED. R. CIV. P. 14, applicable in adversary proceedings under FED. R. BANKR. P. 7014.

**Notice by CM/ECF electronic noticing to:**
Richard Holley, Esq.
Jeffrey Sylvester, Esq.

**Notice by mail to:**
Sawnie McEntire, Esq.
Beirne, Maynard & Parsons, L.L.P.
1700 Pacific Avenue, Suite 4400
Dallas, TX 4400

7

1   Jeffrey R. Sylvester,  SBN 4396
    jeff@sylvesterpolednak.com
2   SYLVESTER & POLEDNAK
    1731 Village Center Circle
3   Las Vegas, NV 89134
    Telephone: (702) 952-5200
4   Facsimile: (702) 952-5205

5

6   Attorneys for Third-Party Defendants
    Credit Suisse AG, Cayman Islands Branch,
7   Credit Suisse Securities (USA) LLC, Credit Suisse
    Holdings (USA), Inc., Credit Suisse (USA), Inc. and
8   Credit Suisse AG, New York Branch

Elizabeth W. Walker, SBN 113545
(admitted *pro hac vice*)
ewalker@sidley.com
SIDLEY AUSTIN LLP
555 West Fifth Street, Suite 4000
Los Angeles, California  90013
Telephone:  (213) 896-6000
Facsimile:  (213) 896-6600

9

10                    UNITED STATES BANKRUPTCY COURT

11                           DISTRICT OF NEVADA

12   In re:                                     Case No. BK-S-09-14814-LBR
                                                Adv. No. BK-S-12-01099-LBR
13   THE RHODES COMPANIES, LLC, aka             District Case No. 2:12-cv-01272-MMD
     "Rhodes Homes," et al.,
14                                              Chapter 11
                    Debtors.
15                                              **MOTION OF CREDIT SUISSE AG,**
                                                **CAYMAN ISLANDS BRANCH; CREDIT**
16   THE LITIGATION TRUST OF THE                **SUISSE SECURITIES (USA) LLC;**
     RHODES COMPANIES, LLC, ET AL.,             **CREDIT SUISSE HOLDINGS (USA),**
17                                              **INC.; CREDIT SUISSE (USA), INC.; AND**
                    Plaintiff,                  **CREDIT SUISSE AG, NEW YORK**
18                                              **BRANCH TO DISMISS RHODES**
            v.                                  **ENTITIES' THIRD-PARTY**
19                                              **COMPLAINT**
     JAMES M. RHODES, SEDORA HOLDINGS,
20   LLC, SAGEBRUSH ENTERPRISES, INC.,
     GYPSUM RESOURCES, LLC, TRUCKEE
21   SPRINGS HOLDING, INC., JOHN C.
     RHODES, JOHN C. RHODES, TRUSTEE OF
22   THE JAMES M. RHODES DYNASTY
     TRUST I, JOHN C. RHODES, TRUSTEE OF
23   THE JAMES M. RHODES DYNASTY
     TRUST, II, HARMONY HOMES, INC.,
24   NORTH 5, LLC, FARM HUALAPAI, LLC,
     HARMONY 2, LLC, HAYDEN SPRINGS
25   PARTNERS, LLC, TROPICAL SANDS, LLC,
     and RHODES RANCH, LLC,
26
                    Defendants.
27

28

1  JAMES M. RHODES, SAGEBRUSH
   ENTERPRISES, INC., JOHN C. RHODES,
2  TRUSTEE OF THE JAMES M. RHODES
   DYNASTY TRUST I, JOHN C. RHODES,
3  TRUSTEE OF THE JAMES M. RHODES
   DYNASTY TRUST, II, and RHODES
4  RANCH, LLC,

5                 Third-Party Plaintiffs,

6          v.

7  CREDIT SUISSE AG, a Swiss corporation;
   CREDIT SUISSE GROUP AG, a Swiss
8  corporation; CREDIT SUISSE SECURITIES
   (USA), LLC, a Delaware limited liability
9  company, f/k/a CREDIT SUISSE FIRST
   BOSTON, LLC a/k/a CREDIT SUISSE AG
10 NEW YORK BRANCH f/k/a CREDIT
   SUISSE, NEW YORK BRANCH, an entity of
11 unknown type, and a/k/a CREDIT SUISSE
   AG, CAYMAN BRANCH f/k/a CREDIT
12 SUISSE, CAYMAN ISLANDS BRANCH, an
   entity of unknown type; CREDIT SUISSE
13 (USA), INC, a Delaware corporation, f/k/a
   CREDIT SUISSE FIRST BOSTON, INC. a/k/a
14 CREDIT SUISSE AG NEW YORK BRANCH
   f/k/a CREDIT SUISSE, NEW YORK
15 BRANCH, an entity of unknown type, and
   a/k/a CREDIT SUISSE AG, CAYMAN
16 BRANCH f/k/a CREDIT SUISSE, CAYMAN
   ISLANDS BRANCH, an entity of unknown
17 type; CREDIT SUISSE HOLDINGS (USA)
   INC., a Delaware corporation; CREDIT
18 SUISSE AG, NEW YORK BRANCH f/k/a
   CREDIT SUISSE, NEW YORK BRANCH, an
19 entity of unknown type; CREDIT SUISSE AG,
   CAYMAN BRANCH f/k/a CREDIT SUISSE,
20 CAYMAN ISLANDS BRANCH, an entity of
   unknown type; CUSHMAN & WAKEFIELD
21 OF NEVADA, INC., a Delaware corporation;
   CUSHMAN & WAKEFIELD OF TEXAS,
22 INC., a Texas corporation; CUSHMAN &
   WAKEFIELD, INC., a New York corporation,

23                Third-Party Defendants.

24

25

26

27

28

LA1 2706404

# **TABLE OF CONTENTS**

**Page**

I. INTRODUCTION ................................................................................................ 1

II. FACTUAL AND PROCEDURAL BACKGROUND......................................... 2

    A. The 2005 Credit Agreements ............................................................... 2

    B. Chapter 11 Petitions, Cash Collateral Order, And Third Amended
    Reorganization Plan .............................................................................. 3

        1. The Chapter 11 Petitions And The Cash Collateral Order ........ 3

        2. The Mediation Settlement And Third Amended Plan Of
        Reorganization ........................................................................... 3

    C. The Litigation Trust Complaint ............................................................ 5

    D. The Third-Party Complaint ................................................................... 5

III. THE DOCTRINE OF RES JUDICATA BARS THE THIRD-PARTY
COMPLAINT ..................................................................................................... 6

IV. THE CASH COLLATERAL ORDER BARS THE THIRD-PARTY COMPLAINT ....... 7

V. THE THIRD-PARTY COMPLAINT IS BARRED BY 11 U.S.C. § 1144......................... 8

VI. THE NEGLIGENT MISREPRESENTATION CLAIMS FAIL TO STATE A
CLAIM............................................................................................................... 9

    A. The Negligent Misrepresentation Claims Fail To Satisfy Rule 9(b) ................... 10

    B. The Negligent Misrepresentation Claims Are Time-Barred................................ 11

    C. The Rhodes Entities Fail To State Claims For Negligent Misrepresentation....... 13

        1. The Parties Did Not Have A "Special" or "Privity Like"
        Relationship ............................................................................... 13

        2. The Rhodes Entities Do Not Identify Any Misrepresentation................ 15

        3. The Rhodes Entities Fail To Allege Detrimental Reliance...................... 15

VII. The Equitable Indemnity Claim Fails ............................................................... 16

VIII. The Rhodes Entities Fail To State A Claim For Contribution........................... 17

IX. The Breach Of Contract Claim Fails ................................................................ 18

    A. The Rhodes Entities Are Not Third Party Beneficiaries To The Agreements...... 18

    B. The Litigation Complaint Does Not Constitute A Breach Of Contract................ 19

X. CONCLUSION................................................................................................. 20

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

C ASES

Artwear, Inc. v. Hughes,
    202 A.D.2d 76, 615 N.Y.S.2d 689 (1st Dep't 1994) .................................18

Atsco Ltd. v. Swanson,
    29 A.D.3d 465, 816 N.Y.S.2d 31 (1st Dep't 2006) .................................20

Bank of New York v. Berisford Int'l P.L.C.,
    190 A.D.2d 622, 594 N.Y.S.2d 152 (1st Dep't 1993) .............................20

Baymiller v. Ranbaxy Pharms., Inc.,
    Case No. 3:11-cv-858-RCJ-VPC, 2012 U.S. Dist. LEXIS 127285
    (D. Nev. Sept. 6, 2012) ...............................................................14

Brant v. Shea Mortg., Inc.,
    Case No. 2:10-CV-771 JCM (RJJ), 2010 U.S. Dist. LEXIS 80940
    (D. Nev. Aug. 6, 2010) ...............................................................12

In re California Litfunding,
    360 B.R. 310 (Bkrtcy. C.D. Cal., 2007)...................................................9

Certain Underwriters at Lloyd's, London v. William M. Mercer, Inc.,
    7 Misc.3d 1008(A), 801 N.Y.S.2d 231, 2005 NY Slip Op 50507(U) (Sup. Ct., N.Y.Co.
    April 12, 2005)...........................................................................11, 12

Clark County Sch. Dist. v. Richardson Constr., Inc.,
    168 P.3d 87 (Nev. 2007) .............................................................17

County of Westchester v. Welton Becket Associates,
    102 A.D.2d 34, 478 N.Y.S.2d 305 (2nd Dep't 1984) ............................17

Crimi v. Black,
    219 A.D.2d 610, 631 N.Y.S.2d 387 (2nd Dep't 1995) ..........................17

Davila v. BAC Home Loans Servicing, LP,
    Case No. 2:10-cv-02252-ECR-GWF, 2011 U.S. Dist. LEXIS 81682
    (D. Nev. July 26, 2011)...............................................................10

Dobroshi v. Bank of Am., N.A.,
    65 A.D.3d 882, 886 N.Y.S.2d 106 (1st Dep't 2009) ............................14

First Nationwide Bank v. Gelt Funding Corp.,
    27 F.3d 763 (2d Cir. 1994)..........................................................15

In re Fitness Holdings, Intern., Inc.,
    No. CV 10–0647 AG, 2011 WL 7763674 (C.D. Cal. Aug. 31, 2011) .....................8

ii

In re Genesis Health Ventures, Inc.,
    355 B.R. 438 (Bankr. D. Del. 2006) ............................................................9

Giles v. GMAC,
    494 F. 3d 865 (9th Cir. 2007) ...................................................................14

In re Heritage Hotel Partnership I,
    160 B.R. 374 (9th Cir. BAP 1993) aff'd mem. 59 F.3d (9th Cir. 1995)...................6

Herold v. One West Bank,
    Case No. 2:10-CV-02204-KJD-GWF, 2011 U.S. Dist. LEXIS 112512
    (D. Nev. Sept. 29, 2011) ............................................................................12

Hoopes v. Hammergren,
    725 P. 2d 238 (Nev. 1986) ........................................................................15

Intri-Plex Techs., Inc. v. Crest Group, Inc.,
    499 F.3d 1048 (9th Cir. 2007) .....................................................................3

I.R.S. v. Patriot Contracting Corp.,
    Civ. A. No. 06-2133 (JLL), 2007 WL 433392 (D.N.J. Feb. 7, 2007) ....................8

J.A.O. Acquisition Corp. v. Stavitsky,
    8 N.Y.3d 144, 831 N.E.2d 364 (2007).........................................................13, 14, 15

Kite v. Zimmer US, Inc.,
    Case No. 2:06-CV-0745-RCJ (RJJ), 2006 U.S. Dist. LEXIS 85420
    (D. Nev. Nov. 21, 2006) ...........................................................................12, 13, 14

Labrie v. UPS Supply Chain Solutions, Inc.,
    Case No. C 08-3182 PJH, 2008 U.S. Dist. LEXIS 77637
    (N.D. Cal. Oct. 3, 2008)...........................................................................11

Lentell v. Merrill Lynch & Co., Inc.,
    396 F. 3d 161 (2d Cir. 2005).....................................................................16

Martinez v. Bank of Am. Nat'l Ass'n,
    Case No. 3:10-cv-00287-RCJ-RAM, 2010 U.S. Dist. LEXIS 113378
    (D. Nev. Oct. 20, 2010)............................................................................18

MBIA Insurance Corp. v. Countrywide Home Loans, Inc.,
    87 A.D.3d 287, 928 N.Y.S.2d 229 (1st Dep't 2011) ....................................14

Meyercord v. Curry,
    38 A.D.3d 315, 832 N.Y.S.2d 29 (1st Dep't 2007) ....................................13, 15

Mid-Valley Oil Company, Inc. v. Hughes Network Systems, Inc.,
    54 A.D. 3d 394, 863 N.Y.S.2d 244 (2nd Dep't 2008) ...............................18

MRO Communications, Inc. v. American Telephone & Telegraph Company,
   197 F.3d 1276 (9th Cir. 1999) ...............................................................................11

Neubronner v. Milken,
   6 F.3d 666 (9th Cir. 1993) .....................................................................................10

In re Newport Harbor Assoc.,
   589 F.2d 20 (1st Cir. 1978)......................................................................................9

Olson v. Iacometti,
   533 P.2d 1360 (Nev. 1975) ....................................................................................18

In re Orange Tree Assocs., Ltd.,
   961 F.2d 1445 (9th Cir. 1992) .................................................................................8

Orr v. Bank of America, NT & SA,
   285 F.3d 764 (9th Cir. 2002) .................................................................................12

In re Pardee,
   193 F.3d 1083 (9th Cir. 1999) .................................................................................6

Plaza Bank v. Alan Green Family Trust,
   Case No. 2:11-cv-130-RCJ-RJJ, 2011 U.S. Dist. LEXIS 82802
   (D. Nev. Jul. 26, 2011)..........................................................................................20

In re QLT Inc. Securities Lit.,
   312 F. Supp. 2d 526 (S.D.N.Y. 2004)....................................................................16

R&O Constr. Co. v. Rox Pro Int'l Group, Ltd.,
   Case No. 2:09-cv-01749-LRH-LRL, 2011 U.S. Dist. LEXIS 131633
   (D. Nev. Nov. 14, 2011) ........................................................................................18

Rodriguez v. Primadonna Co., LLC,
   216 P.3d 793 (Nev. 2009)......................................................................................17

Sciallo v. Tyco Intern. Ltd.,
   03 CIV 7770 (KBF), 2012 WL 2861340 (S.D.N.Y. July 9, 2012)........................15

Sebastian Holdings, Inc. v. Deutsche Bank AG,
   78 A.D.3d 446, 912 N.Y.S.2d 13 (1st Dep't 2010) ...............................................14

Speros v. Bank of Am. N.A.,
   Case No. 11cv1850 DMS (NLS), 2012 U.S. Dist. LEXIS 12409
   (S.D. Cal. Feb. 2, 2012) .........................................................................................11

Swartz v. KPMG LLP,
   476 F.3d 756,763 (9th Cir. 2007) ............................................................................3

Tenenbaum v. Gibbs,
   27 A.D.3d 722, 813 N.Y.S.2d 155 (2nd Dep't 2006) ........................................13, 14

Tipton v. Heeren,
   859 P.2d 465 (Nev. 1993) ................................................................................12

Toledo Fund, LLC v. HSBC Bank USA, NA,
   No. 11 Civ. 7686, 2012 WL 364045 (S.D.N.Y. Feb 3, 2012) .................................14

Trulis v. Barton,
   107 F.3d 685 (9th Cir. 1995) ..............................................................................6

United Int'l Holdings v. Wharf Ltd.,
   988 F. Supp. 367 (S.D.N.Y. 1997)......................................................................18

Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald L.P.,
   40 F.Supp.2d 183 (S.D.N.Y. 1999)...............................................................10, 13

Vidor v. Am. Int'l Group, Inc.,
   491 Fed. Appx. 828, 2012 U.S. App. LEXIS 23900, Case No. 11-16828
   (9th Cir. Nov. 20, 2012).....................................................................................10

William L. Crow Constr. Co. v. Quickway Metal Fabricators, Inc.,
   155 A.D.2d 295, 547 N.Y.S.2d 59 (1st Dep't 1989) ............................................17

Williams v. State,
   90 A.D.2d 861, 456 N.Y.S.2d 491 (3d Dep't 1982)...........................................10, 13

Wooten v. Countrywide Home Loans, Inc.,
   Case No. CIV S-11-1791 MCE DAD PS, 2012 U.S. Dist. LEXIS 12027
   (E.D. Cal. Feb. 1, 2012) ....................................................................................11

**STATUTES**

11 U.S.C. § 1144 .......................................................................................2, 8, 9

Federal Rule of Bankruptcy Procedure 7009(b) .......................................................1

Federal Rule of Bankruptcy Procedure 7012(b) ......................................................1

Federal Rule of Civil Procedure 9(b)............................................................1, 2, 10

Federal Rule of Civil Procedure 12(b)(6) ...............................................................1

v

Third-Party Defendants Credit Suisse AG, Cayman Islands Branch (formerly known as Credit Suisse, Cayman Islands Branch), Credit Suisse Securities (USA) LLC, Credit Suisse Holdings (USA), Inc., Credit Suisse (USA), Inc., and Credit Suisse AG, New York Branch (collectively, "Credit Suisse") hereby move, pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6) and Federal Rules of Bankruptcy Procedure 7009(b) and 7012(b), to dismiss the Third-Party Complaint of James M. Rhodes, Sagebrush Enterprises, Inc., John C. Rhodes, trustee of the James M. Rhodes Dynasty Trust I, John C. Rhodes, trustee of the James M. Rhodes Dynasty Trust II and Rhodes Ranch, LLC (collectively, the "Rhodes Entities"). This Motion is based on the Memorandum of Points and Authorities below, the Request for Judicial Notice filed concurrently herewith, the pleadings and papers in the Court's files, and the argument of counsel at the hearing of this Motion.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.  INTRODUCTION

More than three years ago, this Court confirmed the Third Amended Modified Plan of Reorganization ("Plan"), which Plan was consummated. The Plan was the product of extensive negotiations and a settlement among the Rhodes Entities, Debtors, the Creditors Committee and lenders (including Credit Suisse). Pursuant to the Plan, a Litigation Trust was established for the purpose of pursuing the very claims asserted by the Litigation Trust against the Rhodes Entities -- with all recoveries to be distributed pursuant to the terms of the Plan. Now, in a transparent attempt to circumvent their settlement and this Court's Order confirming the Plan, the Rhodes Entities seek to deprive Credit Suisse of its bargained-for benefits under the Plan and impose liability (where none exists) on Credit Suisse for the Rhodes Entities' alleged misconduct. As discussed more fully below, each of the claims asserted in the Third-Party Complaint should be dismissed with prejudice.

First, all claims are barred since they rest on arguments that could have been raised as objections to the Plan before confirmation and are now precluded under the doctrine of *res judicata*.

Second, all claims are barred by the April 30, 2009 Cash Collateral Order, which required the Rhodes Entities to pursue any claims against Agent and Lenders before the earlier of March 31, 2010 or the Effective Date of the Plan -- and, upon a failure to do so, all such claims were "forever

1

relinquished, released and waived."

**Third**, all claims are barred because they effectively seek to revoke confirmation of the Plan long after the 180-day deadline imposed by 11 U.S.C. § 1144.

**Fourth**, the negligent misrepresentation claims (first and second causes of action) should be dismissed on the independent grounds that they (i) fail to meet the heightened pleading requirements of Federal Rule of Civil Procedure 9(b), (ii) are time-barred by the applicable limitations period, and (iii) fail to state a claim for relief because they do not allege the requisite elements.

**Fifth**, the third cause of action for equitable indemnity fails to state a claim for relief since (i) the Rhodes Entities do not (and cannot) allege any duty owed by Credit Suisse to the Rhodes Entities, and (ii) it is premised on a finding that the Rhodes Entities engaged in wrongful conduct -- which finding precludes equitable indemnity.

**Sixth**, the fourth cause of action for contribution fails to state a claim for relief since the Rhodes Entities do not (and cannot) allege any duty owed by Credit Suisse to the Rhodes Entities or the Litigation Trust -- or a breach thereof -- giving rise to Credit Suisse's liability for the Rhodes Entities' misconduct as asserted by the Litigation Trust.

**Finally**, the fifth cause of action for breach of contract fails to state a claim for relief because (i) the Rhodes Entities are not third-party beneficiaries of the agreements allegedly breached, and (ii) the filing of the Litigation Trust Complaint does not violate the non-recourse provisions of those agreements.

## II.     FACTUAL AND PROCEDURAL BACKGROUND

### A.     The 2005 Credit Agreements

On or about November 21, 2005, Heritage Land Company, LLC, Rhodes Ranch, G.P., and The Rhodes Companies, LLC (collectively, "Borrowers") entered into a $430 million Senior Secured Credit Facility (First Lien) and a $70 million Senior Secured Credit Facility (Second Lien) (collectively, the "2005 Credit Agreements"). (Third-Party Complaint ("TPC") [Adv. Dkt. No. 178], ¶¶ 1, 46.) Thereafter, and as a result of the "unprecedented (and unforeseen) collapse" of the national real estate and housing markets, Borrowers (i) failed to repay the amounts owed to Credit

Suisse and Lenders, and (ii) were forced to file Chapter 11 proceedings.  (TPC, ¶¶ 52, 53.)

**B.     Chapter 11 Petitions, Cash Collateral Order, And Third Amended Reorganization Plan**

**1.     The Chapter 11 Petitions And The Cash Collateral Order**

On or about March 31, 2009, The Rhodes Companies, LLC and certain of its affiliates and subsidiaries (collectively, "Debtors") filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code.  (TPC, ¶¶ 21, 53.)  On April 30, 2009, the Court entered a final stipulated order authorizing Debtors' use of cash collateral (the "Cash Collateral Order).[1]  Pursuant to the Cash Collateral Order, all non-Debtor parties in interest were required to, among other things, "pursue claims or causes of action against" Agents or Lenders (including Credit Suisse) prior to the termination of the "Challenge Period," or such claims and causes of action were deemed "forever relinquished, released and waived" by any "person or entity".[2]  The "Challenge Period" was extended on multiple occasions, with the last extension through the earlier of (i) March 31, 2010, or (ii) the Effective Date of the Plan.[3]

**2.     The Mediation Settlement And Third Amended Plan Of Reorganization**

On December 1, 2009, the Court entered the Order approving, among other things, the First Lien Steering Committee's Second Amended Modified Disclosure Statement ("Disclosure Statement") for the Second Amended Modified Plan of Reorganization Pursuant to Chapter 11 of the United States Bankruptcy Code for the Rhodes Companies, LLC, et. al. ("Second Amended Plan"). The Disclosure Statement confirmed that the Second Amended Plan was "the product of extensive negotiations and settlement" reached among the First Lien Steering Committee (which included Credit Suisse), Debtors, James Rhodes, the Rhodes Entities, the Creditors Committee and the

---

[1] See Request for Judicial Notice ("RJN"), filed concurrently herewith, Ex. A (April 30, 2009 Cash Collateral Order [Dkt. No. 126])).  The Cash Collateral Order and all other documents referred to in this Motion are properly before the Court on a motion to dismiss because they are:  (a) part of the Court's "public record," and therefore subject to judicial notice, see e.g., Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007); and/or (b) referred to in the Third Party Complaint.  See e.g., Swartz v. KPMG LLP, 476 F.3d 756,763 (9th Cir. 2007).

[2] RJN, Ex. A (April 30, 2009 Cash Collateral Order), ¶ 10.

[3] RJN, Ex. B (Fifth Stipulation to Extend Cash Collateral Termination Date [Dkt. No. 1030], ¶ 2.

Second Lien Agent.[4] On February 18, 2010, the Third Amended Modified Plan of Reorganization (the "Plan") was filed.[5] The Plan provides, among other things, that:

(1) "On the Effective Date, the Litigation Trust will be implemented pursuant to the terms of the Litigation Trust Agreement", with the Debtors to "transfer the Litigation Trust Assets for and on behalf of the Litigation Trust Beneficiaries, which will be Holders of Allowed Claims in Classes C-1, C-2 and C-3" (RJN, Ex. D (Plan), § IV. O.);[6]

(2) The Litigation Trust Assets include, among other things, "all Claims existing against the Rhodes Entities that are not expressly released under the Plan" (RJN, Ex. D (Plan), § IV. O.);

(3) "[T]he Litigation Trust shall retain and may enforce all rights to commence and pursue, as appropriate, any and all Causes of Action" (RJN, Ex. D (Plan), § IV. O.); and

(4) "On the Effective Date each Holder of a First Lien Lender Deficiency Claim shall receive its pro rata share of the Litigation Trust Interests allowable to the Holders of First Lien Lender Deficiency Claims on account of its Allowed Claim" (RJN, Ex. D (Plan), § III.B.6.c., 7.c.; § IV. O.).

On March 12, 2010, the Court entered the Confirmation Order, which provides, among other things, that: (a) "the Mediation Settlement (as modified by the Plan) is fair, equitable and reasonable and is hereby approved"; and (b) "the settlements, compromises, releases, discharges, exculpations and injunctions set forth in Article VIII of the Plan are fair, reasonable, in good faith" and "are

[4] RJN, Ex. C (Disclosure Statement), p. 1, lines 15-18; and Ex. 1 (Mediation Term Sheet) to Ex. A (Second Amended Plan) thereto.

[5] RJN, Ex. D ( Proposed Findings of Fact, Conclusions of Law and Order Confirming Third Amended Plan ("Confirmation Order")), which attaches as Exhibit A the Third Amended Plan [Dkt. No. 1053].

[6] Litigation Trust Beneficiaries are defined as "[t]he Holders of Claims that are to be satisfied, in whole or in part, by post-Effective Date distributions that are to be made by the Litigation Trust." (RJN, Ex. D (Plan), § I.A.85.) Class C-2 consists of First Lien Lender Deficiency Claims (including Credit Suisse) and Class C-3 consists of Second Lien Lender Deficiency Claims. (Id. at § III.B.6.c., 7.c.)

integral components of the Mediation Settlement (as modified by the Plan) that is embodied in the Plan" (RJN, Ex. D (Confirmation Order), ¶¶ 18, 20).

### C. The Litigation Trust Complaint

On May 11, 2012, the Litigation Trust filed a Complaint against the Rhodes Entities (the "Litigation Trust Complaint" [Adv. Dkt. No. 1]). On January 11, 2013, the Rhodes Entities filed an Answer to the Litigation Trust Complaint ("Answer") [Adv. Dkt. No. 176]).

The Litigation Trust Complaint alleges various breaches of fiduciary duty, fraudulent transfers and other misconduct by and of the Rhodes Entities, and asserts claims for: (1) breach of fiduciary duty; (2) aiding and abetting breach of fiduciary duty; (3) alter ego/piercing the corporate veil; (4) unjust enrichment; (5) avoidance and recovery of fraudulent transfers; (6) recovery of avoidable transfers; and (7) declaratory relief, turnover and avoidance of transfer.[7]

### D. The Third-Party Complaint

On January 25, 2013, the Rhodes Entities filed the Third-Party Complaint [Adv. Dkt. No. 178], which, from its vague allegations, appears to be based on two fatally defective grounds.

First, the Rhodes Entities assert that Credit Suisse fraudulently induced the Rhodes Entities and/or the "Rhodes Home enterprise" to allow Borrowers to enter into the 2005 Credit Agreements by virtue of the Rhodes Entities' alleged receipt of an appraisal prepared by Cushman & Wakefield, which appraisal utilized a "total net value" methodology (the "2005 C&W Total Net Value Appraisal"). (TPC, ¶¶ 43, 60, 61, 68, 71-73, 77.) Nowhere, however, is it alleged how the 2005 C&W Total Net Value Appraisal -- the methodology of which was known by the Rhodes Entities before Borrowers entered into the 2005 Credit Agreements (TPC, ¶ 43) -- misrepresented anything.

Second, the Rhodes Entities allege that Credit Suisse -- "after agreeing to insulate itself from

---

[7] Of the sixteen count Litigation Trust Complaint, **only two counts** -- breach of fiduciary duty and aiding and abetting same (Counts 1 and 2) -- are based on the alleged conduct of the Rhodes Entities in causing the Borrowers to enter into the 2005 Credit Agreements. The remaining fourteen counts are based on: (a) the Rhodes Entities' alleged misconduct after entering into the 2005 Credit Agreements in transferring cash and other benefits from Debtors to or for the benefit of the Rhodes Entities for no consideration or benefit in exchange therefor (Counts 4 through 13); (b) alter ego as to James Rhodes and Sagebrush Enterprises, Inc. (Count 3); and (c) the wrongful transfer of a 99% membership interest in Gypsum Resources, LLC to the Rhodes Entities (Counts 14, 15, 16).

any liability for the 2005 loan transaction as part of the Plan" -- breached the 2005 Credit Agreements by "directing, participating in, and standing to benefit from" the filing of the Litigation Trust's Complaint. (TPC, ¶¶ 58, 94.) In particular, the Rhodes Entities allege that the Litigation Trust Complaint (with resulting recoveries to be distributed to Credit Suisse and Lenders on account of their allowed bankruptcy claims) is a breach of the non-recourse provisions of Section 9.21 of the 2005 Credit Agreements.

## III. THE DOCTRINE OF RES JUDICATA BARS THE THIRD-PARTY COMPLAINT

"Once a bankruptcy plan is confirmed, it is binding on all parties and all questions that ***could have been raised*** pertaining to the plan are entitled to *res judicata* effect." Trulis v. Barton, 107 F.3d 685, 691 (9th Cir. 1995) (emphasis added).[8]

The Rhodes Entities' current attempt to litigate issues which could have been raised as objections to confirmation of the Plan -- including lender liability claims based on alleged fraudulent inducement in causing Borrowers to enter into the 2005 Credit Agreements and the alleged breach of those agreements based on the filing of the Litigation Trust Complaint -- is an improper collateral attack on the Plan. Indeed, well before Plan confirmation (and after participating in extensive settlement negotiations and a three-day mediation with, among others, Credit Suisse),[9] the Rhodes Entities knew that: (a) interests in the Litigation Trust were to be distributed pursuant to the Plan, which specifically provided that the First and Second Lien Lenders (including Credit Suisse) "shall receive [their] pro rata share of the Litigation Trust Interests" on account of the allowed deficiency claims; (b) the First and Second Lien Lenders (including Credit Suisse) would benefit from any

---

[8] See also In re Pardee, 193 F.3d 1083, 1086 (9th Cir. 1999) ("[i]t is absolutely incumbent upon a creditor to take an active role in protecting its interests, and a creditor which fails to do so is in a poor position to later complain about an adverse result."); In re Heritage Hotel Partnership I, 160 B.R. 374, 377-78 (9th Cir. BAP 1993) aff'd mem. 59 F.3d 175 (9th Cir. 1995) (debtor's equity holders' claims barred by confirmed plan because "[i]t is now well-settled that a bankruptcy court's confirmation order is a binding, final order, accorded full *res judicata* effect and precludes the raising of issues which could or should have been raised during the pendency of the case, such as typical lender liability causes of action").

[9] (TPC, ¶ 85; RJN, Ex. C (Disclosure Statement), p. 1, lines 15-18; Ex. 1 (Mediation Term Sheet) attached to Ex. A (Second Amended Plan) to Disclosure Statement).

6

recoveries by the Litigation Trust in connection with claims against the Rhodes Entities; and (c) that the Litigation Trust contemplated bringing the very claims asserted in the Litigation Trust Complaint.[10]  In short, if the Rhodes Entities believed that they had viable causes of action against Credit Suisse related to the 2005 Credit Agreements which would have affected Credit Suisse's treatment under the Plan (including those alleged in the Third-Party Complaint), they were required to assert such claims during the confirmation process.  Any attempt to raise such claims three years after Plan confirmation is barred.

## IV.     THE CASH COLLATERAL ORDER BARS THE THIRD-PARTY COMPLAINT

All of the Rhodes Entities' claims are barred by the Cash Collateral Order, which provides, in part:

> [T]he extent, validity, priority, perfection, and enforceability of the First Priority Indebtedness, First Priority Liens [. . .] are for all purposes subject to the rights of any party in interest [. . .] to (1) file a complaint pursuant to Bankruptcy Rule 7001, (2) object to the allowability of any of, or any portion of, the Lender Parties' liens or claims [. . .], or (3) take such other action or seek another mechanism seeking to invalidate, avoid, subordinate or otherwise challenge the First Priority Indebtedness, First Priority Liens, [. . .] or any liens, claims or other obligations incurred in connection with any of the foregoing *or pursue claims or causes of action against the First Lien Agent, First Lien Lenders, Second Lien Agent and/or Second Lien Lenders, applicable* (each of (1)-(3) above, a "*Challenge*").

(RJN, Ex. A ¶ 10 (emphasis added).)

Pursuant to the Cash Collateral Order, any claims against Credit Suisse (as Agent or First Lien Lender) constituted a Challenge.  If no Challenge was asserted during the Challenge Period, any and all Challenges were (i) "deemed to have been forever relinquished, released and waived", and (ii) "not [] subject to any other or further claims, causes of action, objection, contest, setoff, defense or challenge by any party in interest for any reason".  (Id., ¶¶ 10, 11.)

Given the Rhodes Entities' failure to timely "pursue claims or causes of action" against Credit Suisse, all such claims were "forever relinquished, released and waived", and must be dismissed.  See In re Fitness Holdings, Intern., Inc., No. CV 10–0647 AG, 2011 WL 7763674 (C.D.

---

[10] See Section I.B.2., above.

Cal. Aug. 31, 2011) (dismissing creditors' committee complaint against lender where committee failed to assert challenge within the time frame imposed by cash collateral order).[11]

## V. THE THIRD-PARTY COMPLAINT IS BARRED BY 11 U.S.C. § 1144

The Third-Party Complaint seeks damages, contribution and equitable indemnity based on (i) a finding that <u>if</u> the Litigation Trust prevails in its claims against the Rhodes Entities, then (ii) Credit Suisse is liable to the Rhodes Entities for <u>any</u> judgment or recovery obtained by the Litigation Trust (which recoveries would be distributed to Credit Suisse and all other Lenders on account of allowed claims), and (iii) as a result, Credit Suisse must "give back" any such recovery or judgment against the Rhodes Entities as "damages" (including all amounts received and retained by Credit Suisse and all other Lenders). Simply put, the Third-Party Complaint is a transparent attempt by the equity holders of Debtors to challenge post-confirmation Credit Suisse's entitlement to a distribution under the Plan. Indeed, the Rhodes Entities seek to "re-divide the pie" and upset the confirmed Plan by: (a) preventing Credit Suisse from obtaining that which was bargained for in the settlement negotiations and mediation with the Rhodes Entities, and confirmed in the Plan -- <u>i.e.</u>, the receipt and retention by Credit Suisse of its pro rata share of any and all proceeds recovered by the Litigation Trust against the Rhodes Entities; and (b) attempting to seek as damages against Credit Suisse **all** amounts that the Litigation Trust recovers against the Rhodes Entities. (TPC, ¶¶ 85, 89, 96.)

"An order confirming a Chapter 11 reorganization plan may be revoked only in accordance with 11 U.S.C. § 1144," which provides that, "[o]n request of a party in interest at any time **before 180 days after the date of the entry of the order of confirmation**, . . . the court may revoke such order if and only if such order was procured by fraud." <u>In re Orange Tree Assocs., Ltd.</u>, 961 F.2d 1445, 1447 (9th Cir. 1992) (quoting § 1144) (emphasis added)). The 180-day deadline imposed by

---

[11] In addition, the Cash Collateral Order, like the Plan, is entitled to *res judicata* effect and, as such, bars the Rhodes Entities' claims. <u>I.R.S. v. Patriot Contracting Corp.</u>, Civ. A. No. 06-2133 (JLL), 2007 WL 433392 at *8 (D.N.J. Feb. 7, 2007) (holding that cash collateral order constitutes a final judgment for purposes of *res judicata*).

1     § 1144 is absolute and a court has no authority to extend the time period.  Id.[12]  Moreover,

2     Section 1144 applies not only to a motion or other explicit request to revoke confirmation, but also

3     to any claim for relief, including damages or other monetary relief against a non-debtor, that would

4     effectively "redivide the pie" or "upset the confirmed plan."  In re California Litfunding, 360 B.R.

5     310, 320 (Bkrtcy. C.D. Cal., 2007); see also id. at 317-18 (parties cannot avoid § 1144's

6     requirements "by simply characterizing the attempt as an independent cause of action rather than a

7     motion to revoke the [confirmation] order" (citing additional cases)).  Granting any of the relief

8     sought in the Third-Party Complaint would "redivide the pie" and "upset the plan" by, among other

9     things, effectively preventing or avoiding the distribution of the Litigation Trust Assets to Credit

10    Suisse as required by the Plan.  In re California Litfunding, 360 B.R. at 321.[13]  Because the Rhodes

11    Entities failed to bring such claims within the 180-day deadline imposed by § 1144, such claims are

12    barred.

13    ## VI.     THE NEGLIGENT MISREPRESENTATION CLAIMS FAIL TO STATE A CLAIM

14          The Rhodes Entities' first cause of action (negligence) and second cause of action (negligent

15    misrepresentation) (collectively, the "Negligent Misrepresentation Claims") are identical to one

16    another in all material respects.  Both claims are based upon the same vaguely-referenced

17    representations (TPC, ¶¶ 60, 72), and both allege, among other things, that (a) Credit Suisse knew or

18    should have known the representations were false (id.); (b) Credit Suisse failed to exercise

19    reasonable care when making the alleged representations (id., ¶¶ 63, 75); and (c) the representations

20    "caused" the Rhodes Entities to "allow" Borrowers to enter into the 2005 Credit Agreements, which

21    somehow resulted in damages.  (TPC, ¶¶ 65-67, 77-78, 80); (see also Exhibit 1, hereto.)[14]  Where, as

22    here, a negligence claim is based on misrepresentations, such claim constitutes a negligent

23    misrepresentation claim, and a party cannot circumvent the pleading requirements of a negligent

---

[12] See also In re Newport Harbor Assoc., 589 F.2d 20 (1st Cir. 1978).

[13] See also In re Genesis Health Ventures, Inc., 355 B.R. 438, 444-45 (Bankr. D. Del. 2006).

[14] For the convenience of the Court, Exhibit 1 is a comparison of the allegations of the first and second causes of action and confirms their identical nature.

misrepresentation claim by simply labeling it as a claim for negligence.  Vanguard Mun. Bond Fund, Inc. v. Cantor, Fitzgerald L.P., 40 F.Supp.2d 183, 188 (S.D.N.Y. 1998) (negligence claim dismissed due to plaintiff's failure to meet requirements of claim for negligent misrepresentation, where negligence claim was substantively identical to negligent misrepresentation claim); Williams v. State, 90 A.D.2d 861, 862, 456 N.Y.S.2d 491 (3d Dep't 1982) (dismissing negligence claim that was "in reality . . . one for negligent misrepresentation" and did not satisfy the requirements for such a claim).

## A.    The Negligent Misrepresentation Claims Fail To Satisfy Rule 9(b)

As demonstrated below, the Negligent Misrepresentation Claims fail to satisfy the heightened pleading standard under Federal Rule of Civil Procedure 9(b) and must be dismissed.  Vidor v. Am. Int'l Group, Inc., 491 Fed. Appx. 828, 2012 U.S. App. LEXIS 23900, Case No. 11-16828, *1-2 (9th Cir. Nov. 20, 2012) (dismissing negligent misrepresentation claim due to plaintiff's failure to meet the heightened pleading threshold of Rule 9(b)).

First, the Rhodes Entities utterly fail to identify any statements which allegedly "misled" or "induced" them into "allowing" the Borrowers to enter into the 2005 Credit Agreements.  Instead, the Rhodes Entities vaguely allege that Credit Suisse made "oral misstatements", "furnished written and oral information", and made "representations (including but not limited to the Total Net Value appraisals)" to the Rhodes Entities (TPC, ¶¶ 60, 61, 72).  The Rhodes Entities also refer conclusorily to the use of the term "appraisals", and "that the 'Total Net Value' appraisal Cushman & Wakefield performed was based on a methodology that was not a market value appraisal".  (TPC, ¶¶ 33, 44.)  Such broad brush and nebulous allegations do not meet the heightened pleading requirements of Rule 9(b), as the Rhodes Entities are required (but have failed) to (i) "state the content of any allegedly false and misleading statements", (ii) explain what, exactly, was represented to them, and (iii) allege "when and where [they] obtained the [allegedly] false information".  Neubronner v. Milken, 6 F.3d 666, 673 (9th Cir. 1993); see also Davila v. BAC Home Loans Servicing, LP, Case No. 2:10-cv-02252-ECR-GWF, 2011 U.S. Dist. LEXIS 81682, *9 (D. Nev. July 26, 2011) (negligent misrepresentation claim dismissed for failure to allege "the specific content" of the representation).

Second, the Rhodes Entities do not identify which individuals made the alleged representations.  Although the Third-Party Complaint identifies Jeff Barcy, Eric Anderson and Jeff Cohen (TPC, ¶¶ 35, 41), it does not attribute any representations to any of them specifically -- but, instead, impermissibly relies on vague references to "the misrepresentations of Third-Party Defendants" (TPC, ¶ 45), or that "Third-Party Defendants furnished written and oral information to [the Rhodes Entities]" (TPC, ¶¶ 60, 72).  See Speros v. Bank of Am. N.A., Case No. 11cv1850 DMS (NLS), 2012 U.S. Dist. LEXIS 12409, at *5 (S.D. Cal. Feb. 2, 2012) (dismissing claim where, as here, plaintiff "fail[ed] to identify the individual or individuals that made [the] representations [at issue], or when, where or how those representations were made").

Third, the Rhodes Entities' generic allegation that Messrs. Barcy, Anderson and Cohen and "other [unidentified] representatives" allegedly "held themselves and Credit Suisse out to the [Rhodes Entities] as employees of Credit Suisse" (TPC, ¶ 36) is insufficient as the "plaintiff must [1] name any employees of the companies who made any specific representation and [2] must indicate their authority to speak for the company, to whom they spoke and what specifically was said or written[.]"  Wooten v. Countrywide Home Loans, Inc., Case No. CIV S-11-1791 MCE DAD PS, 2012 U.S. Dist. LEXIS 12027, *17-18 (E.D. Cal. Feb. 1, 2012).

Finally, the Rhodes Entities fail to allege which individuals received the "negligent misrepresentations" and who (if anyone) allegedly relied upon them.  See Labrie v. UPS Supply Chain Solutions, Inc., Case No. C 08-3182 PJH, 2008 U.S. Dist. LEXIS 77637, *3 (N.D. Cal. Oct. 3, 2008) (dismissing negligent misrepresentation claim where, as here, plaintiff did not allege the "individuals involved").  Based on the above, the Negligent Misrepresentation Claims must be dismissed.

**B.      The Negligent Misrepresentation Claims Are Time-Barred**

The Negligent Misrepresentation Claims also are barred by the statute of limitations, which is six years under New York law[15] and, at most, three years under Nevada law.[16]  Moreover, under

---

[15] See Certain Underwriters at Lloyd's, London v. William M. Mercer, Inc., 7 Misc.d 1008(A), 801 N.Y.S.2d 231, 2005 NY Slip Op 50507(U), **12 (Sup. Ct., N.Y. Co. April 12, 2005).  The 2005 Credit Agreements provide that they are governed by New York law.  See e.g., RJN, Ex. E (2005

*(footnote continued next page)*

New York law, the six year limitations period runs immediately from the time the challenged representation is made, and the limitations period is not tolled or extended, even where a party has not discovered that a wrong occurred. <u>Certain Underwriters at Lloyd's</u>, 2005 NY Slip Op 50507(U) at **35 ("[a] cause of action for negligent misrepresentation . . . [is] governed by a six-year statute of limitations, [and] the two-year discovery rule does not apply"). In Nevada, the limitations period runs from the time that a party either knew, or should have known, that a misrepresentation was made. <u>Orr v. Bank of America, NT & SA</u>, 285 F.3d 764, 780 (9th Cir. 2002) (under Nevada law, statute of limitations commences when the injured party knew or should have known of its claim).

Here, the gravamen of the Negligent Misrepresentation Claims appears to be that Credit Suisse fraudulently induced the Rhodes Entities and/or the "Rhodes Home enterprise" to allow Borrowers to enter into the 2005 Credit Agreements by virtue of the Rhodes Entities' alleged receipt of (and reliance on) the 2005 C&W Total Net Value Appraisal prepared by Cushman & Wakefield ***over eight years ago***. (TPC ¶¶ 43, 60, 61, 65, 71, 72, 73.) The Rhodes Entities <u>never</u> allege how (or even that) the 2005 C&W Total Net Value Appraisal of which they now complain was misleading. Indeed, their only complaint appears to be that the 2005 C&W Total Net Value Appraisal was not a "market value appraisal." (TPC, ¶ 44.) But, there is no allegation that Credit Suisse or anyone else led the Rhodes Entities to believe that the 2005 C&W Total Net Value Appraisal was anything but a "total net value" appraisal -- and, certainly not a "market value appraisal". Indeed, the Rhodes

---

*(footnote continued from previous page)*
First Lien Credit Agreement), ¶ 9.15). As such, New York law governs the "substantive" merits of the Rhodes Entities' claims. <u>MRO Communications, Inc. v. American Telephone & Telegraph Company</u>, 197 F.3d 1276, 1282 (9th Cir. 1999) ("[u]nder Nevada law, a choice-of-law provision in an agreement will be applied to 'the substantive issues in a case'") <u>citing</u> <u>Tipton v. Heeren</u>, 859 P.2d 465, 466 n.3 (Nev. 1993). The Court, however, need not decide any choice of law issues, as Credit Suisse cites both New York and Nevada law herein, with each requiring the dismissal of the Rhodes Entities' claims.

[16] In Nevada, Courts addressing negligent misrepresentation claims have applied either (i) a two year limitations period (<u>Brant v. Shea Mortg., Inc.</u>, Case No. 2:10-CV-771 JCM (RJJ), 2010 U.S. Dist. LEXIS 80940, *4-5 (D. Nev. Aug. 6, 2010) <u>citing</u> N.R.S. § 11.190(4)(e); <u>Kite v. Zimmer US, Inc.</u>, Case No. 2:06-CV-0745-RCJ (RJJ), 2006 U.S. Dist. LEXIS 85420, *13 (D. Nev. Nov. 21, 2006) (same)), or (ii) a three year limitation period pursuant to N.R.S. §11.190(3)(d) (<u>Herold v. One West Bank</u>, Case No. 2:10-CV-02204-KJD-GWF, 2011 U.S. Dist. LEXIS 112512, *5 (D. Nev. Sept. 29, 2011)).

Entities admit that they knew before Borrowers entered into the 2005 Credit Agreements that the 2005 C&W Total Net Value Appraisal (i) did not provide a present value discount, (ii) simply gave "an idea of the Project's value", and (iii) that Lenders would "perform for themselves whatever quantification and analysis they believed necessary to assess the risks and value of the loan, including determining the appropriate discount rate to apply to the Cushman & Wakefield projected cash flows." (TPC, ¶ 43.) Given these allegations, the Rhodes Entities either knew or should have known in 2005 (and prior to entering into the 2005 Credit Agreements) that the 2005 C&W Total Net Value Appraisal was not a "market value appraisal". As a result, under either New York or Nevada law, the Negligent Misrepresentation Claims are time-barred.[17]

### C.    The Rhodes Entities Fail To State Claims For Negligent Misrepresentation

"A claim for negligent misrepresentation requires the plaintiff to demonstrate (1) the existence of a special or privity-like relationship imposing a duty on the defendant to impart correct information to the plaintiff; (2) that the information was incorrect; and (3) [detrimental] reliance on the information." J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y.3d 144, 148, 831 N.E.2d 364 (2007); Meyercord v. Curry, 38 A.D.3d 315, 316, 832 N.Y.S.2d 29 (1st Dep't 2007). As set forth below, the Rhodes Entities fail to allege any of the requisite elements of a negligent misrepresentation claim.[18]

### 1.    The Parties Did Not Have A "Special" or "Privity Like" Relationship

The Rhodes Entities fail to allege any facts establishing a "special" or "privity-like" relationship with  Credit Suisse.

First, there was *no* relationship between the Rhodes Entities and Credit Suisse -- let alone a "special" or "privity-like" relationship necessary to maintain a negligent misrepresentation claim.

---

[17] Assuming arguendo that the first cause of action sounds in negligence, such claim still would be time-barred. See Tenenbaum v. Gibbs, 27 A.D.3d 722, 723, 813 N.Y.S.2d 155 (2nd Dep't 2006) (three-year limitations period applies to negligence claims); Kite v. Zimmer US, Inc., Case No. 2:06-CV-0745-RCJ (RJJ), 2006 U.S. Dist. LEXIS 85420 at *9 (D. Nev. Nov. 21, 2006) (same).

[18] The negligence claim must meet the same requirements as the negligent misrepresentation claim because, as set forth above, both are based on misrepresentations. See Vanguard Mun. Bond Fund, Inc., 40 F. Supp. at 188; Williams 90 A.D. 2d at 862.

None of the Rhodes Entities was a party to the 2005 Credit Agreements, and the Rhodes Entities cannot claim that *any* relationship existed between them and Credit Suisse in the first instance. See, e.g., J.A.O. Acquisition Corp., 8 N.Y.3d at 148.[19]

Second, "an arm's length borrower-lender relationship is *not* of a confidential or fiduciary nature and therefore does not support a cause of action for negligent misrepresentation." Dobroshi v. Bank of Am., N.A., 65 A.D.3d 882, 884, 886 N.Y.S.2d 106 (1st Dep't 2009) (emphasis added). Since no confidential relationship existed between Borrower and Credit Suisse, the Rhodes Entities (as equity holders of Borrowers) cannot claim any such relationship.

Third, where, as here, the parties to the 2005 Credit Agreements (and their equity holders) were sophisticated business entities dealing at arm's length and on equal terms, there also is no basis to find the requisite "special" or "privity-like" relationship.[20] See Toledo Fund, LLC v. HSBC Bank USA, NA, No. 11 Civ. 7686, 2012 WL 364045 (S.D.N.Y. Feb 3, 2012) ("[i]n order for plaintiff to maintain claims for negligent misrepresentation or negligence, it must allege that there was a special relationship of trust and confidence between the parties. . .This relationship must be different from the arms-length, business relationship the parties had").[21] Moreover, the Rhodes Entities admit that

---

[19] And, assuming that the first cause of action is one for negligence (which it is not), it still would fail as there is no allegation that a duty of care existed between the parties. Tenenbaum v. Gibbs, 27 A.D.3d 722, 723 (2nd Dep't 2006) (dismissing negligence claim where bank did not owe a duty of care to borrower); see also Baymiller v. Ranbaxy Pharms., Inc., Case No. 3:11-cv-858-RCJ-VPC, 2012 U.S. Dist. LEXIS 127285, *23-24 (D. Nev. Sept. 6, 2012) (dismissing negligent misrepresentation claim where plaintiff could not establish any actionable duty); Kite v. Zimmer US, Inc., Case No. 2:06-CV-0745-RCJ (RJJ), 2006 U.S. Dist. LEXIS 85420, *9 (D. Nev. Nov. 21, 2006) (negligence claim must be based upon a duty of care).

[20] The Rhodes Entities admit that: (1) "over the course of the late 1990s and early 2000s, James Rhodes oversaw the operations of a 'home-building enterprise doing business as "Rhodes Homes" in the areas around Las Vegas, Nevada'", (2) the "enterprise consisted of various limited and general partnerships, limited liability companies, and joint ventures that operated to acquire, develop and improve land, to construct residential homes, and to sell property", (3) "[t]hroughout 2003 and 2004, the 'Rhodes Homes' enterprise rapidly increased its land holdings"; and (4) "[t]hroughout 2005, the 'Rhodes Homes' enterprise continued to acquire land. According to the audited financial statements, the land holdings grew to more than $273 million by December 31, 2005, consisting of $66.7 million of 'land held for development' and $207.05 million of 'land held for investment'". (Answer, ¶¶ 36, 39, 42 [Adv. Dkt. No. 176].)

[21] See also MBIA Insurance Corp. v. Countrywide Home Loans, Inc., 87 A.D.3d 287, 296, 928 N.Y.S.2d 229 (1st Dep't 2011) (requisite special relationship "does not arise out of an ordinary arm's length business transaction between two parties"); Sebastian Holdings, Inc. v. Deutsche Bank AG, 78 A.D.3d 446, 447, 912 N.Y.S.2d 13 (1st Dep't 2010) (dismissing negligent misrepresentation

*(footnote continued next page)*

14

Borrowers downsized the amount of the credit facility originally offered to them, from $600 million to $500 million, since "the Rhodes Homes enterprise made the decision that a $500 [million] secured credit facility . . . would be sufficient." (TPC, ¶ 42.) Thus, there can be no dispute that Borrowers independently evaluated the loan and, consequently, there is no basis for them to claim that any "special" relationship existed between Borrowers and Credit Suisse, let alone between Credit Suisse and the Rhodes Entities.

### 2. The Rhodes Entities Do Not Identify Any Misrepresentation

As set forth above, the Rhodes Entities knew that the 2005 C&W Total Net Value Appraisal was not a "market value appraisal" before Borrowers entered into the 2005 Credit Agreement (TPC, ¶ 43). And, nowhere do the Rhodes Entities allege how the 2005 C&W Total Net Value Appraisal was incorrect or misrepresented anything. (Id.) As such, the Negligent Misrepresentation Claims fail. J.A.O. Acquisition Corp. v. Stavitsky, 8 N.Y. 3d at 148.

### 3. The Rhodes Entities Fail To Allege Detrimental Reliance

In order to state a claim for negligent misrepresentation, a plaintiff must "show both that [a] defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and [b] that the misrepresentations directly caused the loss about which [the] plaintiff complains (loss causation)." Meyercord, 38 A.D.3d at 316. [22] The Rhodes Entities, however, fail to establish the requisite detrimental reliance.

First, the Rhodes Entities fail to explain how Credit Suisse's alleged conduct caused any harm. The crux of their claims appears to be that the 2005 C&W Total Net Value Appraisal (and

---

*(footnote continued from previous page)*
claim where "parties engaged in arm's-length transactions pursuant to contracts between sophisticated business entities that do not give rise to fiduciary duties"); see also Giles v. GMAC, 494 F. 3d 865, 881 (9th Cir. 2007) (quoting Hoopes v. Hammergren, 725 P. 2d 238, 242 (Nev. 1986)) ("[t]he essence of a...confidential relationship is that the parties do not deal on equal terms").

[22] See also Sciallo v. Tyco Intern. Ltd., 03 CIV 7770 (KBF), 2012 WL 2861340 at *6 (S.D.N.Y. July 9, 2012) ("loss causation is indeed an essential element of claims for [inter alia] negligent misrepresentation") (emphasis added); First Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 769 (2d Cir. 1994) (Plaintiff "must also show that the misstatements were the reason the transaction turned out to be a losing one").

others prepared by Cushman & Wakefield) were not "market value appraisals."  (TPC, ¶¶ 34, 44-47.)  But the Rhodes Entities do not (and cannot) explain how that "caused" any damages.  Nor do the Rhodes Entities explain what "market value appraisals" would have reflected, and/or how the Rhodes Entities would have acted differently had such "market value appraisals" been provided.

Second, the Rhodes Entities "vehemently dispute" that entering into the 2005 Credit Agreements "'left the Debtors' [sic] over-leveraged and doomed to fail'".  (TPC, ¶ 3.)  Instead, the Rhodes Entities claim that the "unprecedented (and unforeseen) collapse" of the national real estate and housing markets -- not any alleged misrepresentations -- was the cause of Borrowers' inability "to fulfill their obligations under the terms of the $500MM Credit Facility", and their subsequent bankruptcy.  (TPC, ¶¶ 3, 52, 53.)  As such, the Rhodes Entities cannot sufficiently plead causation.[23]

## VII.    THE EQUITABLE INDEMNITY CLAIM FAILS

The Rhodes Entities' equitable indemnity claim seeks "complete and total indemnification by [Credit Suisse] from any liability of any kind that may be imposed upon the Rhodes Entities in connection with any litigation proceeding related to or arising out of [Credit Suisse's allegedly] wrongful conduct."  (TPC, ¶ 85.)  This claim fails for the following reasons.

First, as explained above, the Rhodes Entities fail to allege any duties owed to them pursuant to which Credit Suisse could be liable in the first instance.  Nor do they explain how any of Credit Suisse's allegedly "wrongful conduct" is related to the Litigation Trust's decision to sue the Rhodes Entities for *their* breaches of *their* fiduciary duties and fraudulent conveyances.[24]

---

[23] Lentell v. Merrill Lynch & Co., Inc., 396 F. 3d 161, 174 (2d Cir. 2005) ("'[w]hen the plaintiff's loss coincides with a marketwide phenomenon causing comparable losses to other investors, the prospect that the plaintiff's loss was caused by the fraud decreases', and a plaintiff's claim fails when 'it has not adequately [identified] facts which, if proven, would show that its loss was caused by the alleged misstatements as opposed to intervening events'"); see also In re QLT Inc. Securities Lit., 312 F. Supp. 2d 526, 536 (S.D.N.Y. 2004) (where "an intervening cause supersedes the effects of an initial misrepresentation," loss causation cannot be shown).

[24] Moreover, to the extent the Rhodes Entities allege that Credit Suisse (as a member of the Litigation Trust Advisory Board) "directed" the Litigation Trust to file the Litigation Trust Complaint (TPC, ¶¶ 57, 58, 94), any such conduct was released pursuant to the exculpation provisions contained in the Plan.  See RJN, Ex. D (Plan), § VIII. G. ("no Exculpated Party [which includes Credit Suisse as Agent and First Lien Lender] shall have or incur, and each Exculpated Party is hereby released and exculpated from any Claim, obligation, Cause of Action, or liability to one another, or to any Exculpating Party for any Exculpated Party for any Exculpated Claim, except

*(footnote continued next page)*

Second, the equitable indemnity claim is premised on a finding that the Rhodes Entities engaged in wrongful conduct (TPC, ¶¶ 55, 85) -- which finding precludes equitable indemnity.  See County of Westchester v. Welton Becket Associates, 102 A.D.2d 34, 46-47, 478 N.Y.S.2d 305 (2nd Dep't 1984) (equitable indemnity claim exists only "[w]here one **who has committed no actual wrong** is held vicariously liable for the wrongdoing of another," and seeks to recoup any damages assessed against him from the party who actually committed the wrong) (emphasis added); William L. Crow Constr. Co. v. Quickway Metal Fabricators, Inc., 155 A.D.2d 295, 547 N.Y.S.2d 59, 60 (1st Dep't 1989) (a party that participates "to some degree in the wrongdoing… cannot receive the benefit of the implied indemnification doctrine"); Rodriguez v. Primadonna Co., LLC, 216 P.3d 793, 801 (Nev. 2009) (finding that "implied indemnity is an equitable remedy…to address the unfairness which results when one party, who has committed no independent wrong, is held liable for the loss of a plaintiff caused by another party") (emphasis added.)  Thus, this claim must be dismissed as well.

## VIII.   THE RHODES ENTITIES FAIL TO STATE A CLAIM FOR CONTRIBUTION

 "Contribution involves an apportionment of responsibility where wrongdoers are *in pari delicto*…[and] [e]ach of the wrongdoers owes a duty to the injured party".  County of Westchester, 102 A.D.2d at 46-47; see also Clark County Sch. Dist. v. Richardson Constr., Inc., 168 P.3d 87, 91 n.4 (Nev. 2007) ("contribution is a method of apportioning damages among joint tortfeasors").  Thus, "[a] party seeking contribution must show that the party from whom contribution is sought owes a duty either to him or to the injured party and that a breach of this duty has contributed to the alleged injuries[.]"  Crimi v. Black, 219 A.D.2d 610, 611, 631 N.Y.S.2d 387 (2nd Dep't 1995) (dismissing contribution claim where, as here, no breach of duty occurred).

However, and as discussed above, the Rhodes Entities fail to identify any purported duties between Credit Suisse and any other party that was breached, let alone a tort that Credit Suisse committed, and, instead, restate the allegations of the Negligent Misrepresentation Claims -- which

---

*(footnote continued from previous page)*
for gross negligence, willful misconduct or fraud").

17

are defective as explained in Section VI.C, above.  Accordingly, the contribution claim also must be dismissed.

## IX.    THE BREACH OF CONTRACT CLAIM FAILS

### A.    The Rhodes Entities Are Not Third Party Beneficiaries To The Agreements

The breach of contract claim must be dismissed because, among other things, it is based upon the faulty premise that the Rhodes Entities are third-party beneficiaries under the 2005 Credit Agreements.  (TPC, ¶ 93.)  "In order for a contract to confer enforceable third-party beneficiary rights… the contract language should otherwise clearly evidence 'an intent to permit enforcement by the third party.'"[25]  Here, the opposite is true, as the plain language of 2005 Credit Agreements establish that the Rhodes Entities are **not** intended third party beneficiaries.  Indeed, the 2005 Credit Agreements expressly state that they shall only "inure to the benefit **of the parties hereto** and the successors and assigns **of the Lenders**" and that "neither the Borrowers' rights or obligations hereunder nor any interest therein may be assigned or delegated by any Borrower without the prior written consent of all Lenders."  (RJN, Ex. E (2005 First Lien Credit Agreement) § 9.16) (emphasis added).

Courts have routinely held that the inclusion in an agreement of a provision such as that contained in Section 9.16 defeats any third-party beneficiary claim.  See Martinez v. Bank of Am. Nat'l Ass'n, Case No. 3:10-cv-00287-RCJ-RAM, 2010 U.S. Dist. LEXIS 113378, *27 (D. Nev. Oct. 20, 2010) (provision virtually identical to Section 9.16 precluded plaintiffs from asserting third-party beneficiary status); Mid-Valley Oil Company, Inc. v. Hughes Network Systems, Inc., 54 A.D. 3d 394, 396, 863 N.Y.S.2d 244 (2nd Dep't 2008) (third-party beneficiary claim failed where, as here, plaintiff could not establish that the agreement was intended to "inure to [its] benefit"); United Int'l Holdings v. Wharf Ltd., 988 F. Supp. 367, 373 (S.D.N.Y. 1997) ("[n]on-assignability clauses have

---

[25] See also Artwear, Inc. v. Hughes, 202 A.D.2d 76, 82, 615 N.Y.S.2d 689 (1st Dep't 1994); R&O Constr. Co. v. Rox Pro Int'l Group, Ltd., Case No. 2:09-cv-01749-LRH-LRL, 2011 U.S. Dist. LEXIS 131633 at *8 (D. Nev. Nov. 14, 2011) ("there must be a clear intent in the contract for a benefit to be conferred upon a third-party before a court may recognize a third-party beneficiary of a contract"); Olson v. Iacometti, 533 P.2d 1360, 1364 (Nev. 1975) (a non-party to a contract must prove that it is for his direct benefit before exercising the "exceptional privilege" of suing on it).

18

1  been held to negate third-party beneficiary status, even where assignment was permitted with prior
2  written approval").
3        Thus, under both New York and Nevada law, the Rhodes Entities cannot establish that they
4  have any third-party beneficiary rights, and their claim should be dismissed.[26]

5        **B.    The Litigation Complaint Does Not Constitute A Breach Of Contract**

6        There is no basis for the Rhodes Entities to argue that the ***Litigation Trust's*** pursuit of
7  litigation constitutes any breach by Credit Suisse of the 2005 Credit Facility Agreements. This is
8  because Credit Suisse did not file any lawsuit against the Rhodes Entities.[27]

9        In addition, the Rhodes Entities' breach of contract claim rests on the assertion that the
10 Litigation Trust Complaint seeks to obtain amounts "in order to repay Credit Suisse and Lenders"
11 for "their allowed bankruptcy claims for the unpaid portion of the loans of the $500MM Credit
12 Facility" and, as such, violates the non-recourse provisions of Section 9.21 of the 2005 Credit
13 Agreements (TPC, ¶¶ 92, 94, 95.)[28] This assertion is wrong.
14       Section 9.21 applies only to "liab[ility]" for "Obligations," which is defined as "all
15 obligations of every nature of each Loan Party from time to time owed to the Agents, the Lenders or
16 any of them or their respective Affiliates under the Loan Documents, or, if approved by the
17 Administrative Agent, Specified Hedge Agreements, whether for principal, interest . . . or payments
18 for early termination of Specified Hedge Agreements, fees, expenses, indemnification or otherwise."

19

20 [26] Moreover, the only third-party defendant who is a party to the 2005 Credit Agreements is Credit
21 Suisse AG, Cayman Islands Branch. (TPC, ¶ 47; RJN, Ex. E (2005 First Lien Credit Agreement).
   The Rhodes Entities do not (and cannot) allege any basis to hold Credit Suisse Securities (USA)
22 LLC, Credit Suisse Holdings (USA) Inc., Credit Suisse (USA), Inc., and Credit Suisse AG, New
   York Branch liable for breach of contract and such claim must be dismissed for this additional
23 reason.

24 [27] And, as set forth above, to the extent the Rhodes Entities contend that Credit Suisse "directed" the
   filing of the Litigation Trust Complaint, such conduct was released pursuant to the exculpation
25 provisions of the Plan.

26 [28] Section 9.21 provides: "NOTWITHSTANDING ANYTHING IN ANY OF THE LOAN
   DOCUMENTS TO THE CONTRARY, NO PARTNER, MEMBER, SHAREHOLDER OR OTHER
27 BENEFICIAL OWNER OF THE BORROWERS (OTHER THAN THE LOAN PARTY) SHALL
   BE LIABLE FOR THE PAYMENT OR PERFORMANCE OF THE OBLIGATIONS." (RJN,
   Ex. E (First Lien Credit Agreement), ¶ 9.21.)
28

19

(RJN, Ex. E (First Lien Credit Agreement), § 1.1, pp. 19-20.)  The Litigation Trust does not seek recovery or payment of any "Obligations," as defined in the 2005 Credit Agreements.[29]  Instead, as described above, the Litigation Trust seeks to hold the Rhodes Entities liable for breaches of fiduciary duty, fraudulent transfers, avoidance actions, and other misconduct -- all of which are separate and distinct from the failure of any Borrowers to satisfy "Obligations" to the Lenders.  Such tortious conduct has nothing to do with Section 9.21 and the non-recourse provisions contained therein.  See, e.g., Bank of New York v. Berisford Int'l P.L.C., 190 A.D.2d 622, 623, 594 N.Y.S.2d 152 (1st Dep't 1993) ("causes of action…concern tort claims and seek tort damages, the 'non-recourse' language of the notes and mortgage is not relevant to [such] claims").[30]  Accordingly, there is no basis for the breach of contract claim.

## X.  CONCLUSION

For all of the foregoing reasons, Credit Suisse respectfully requests that the Court grant the Motion to Dismiss the Third-Party Complaint without leave to amend.

Dated: April 8, 2013

SYLVESTER & POLEDNAK

By:    /s/ Jeffrey R. Sylvester
Jeffrey R. Sylvester
1731 Village Center Circle
Las Vegas, NV 89134
Telephone: (702) 952-5200
Attorneys for Third-Party Defendants
Credit Suisse AG, Cayman Islands Branch,
Credit Suisse Securities (USA) LLC, Credit
Suisse Holdings (USA), Inc., Credit Suisse
(USA), Inc., and Credit Suisse AG, New York
Branch

SIDLEY AUSTIN LLP

By:    /s/ Elizabeth W. Walker
Elizabeth W. Walker (admitted pro hac vice)
555 West Fifth Street, 40th Floor
Los Angeles, CA 90013
Telephone: (213) 896-6000
Attorneys for Third-Party Defendants
Credit Suisse AG, Cayman Islands Branch,
Credit Suisse Securities (USA) LLC, Credit
Suisse Holdings (USA), Inc., Credit Suisse
(USA), Inc., and Credit Suisse AG, New York
Branch

---

[29] TPC, ¶ 55; ("[t]he [Litigation Trust] filed an adversary action against the Rhodes Entities…[which] alleges that distributions made to the Rhodes Entities were fraudulent conveyances and seeks to recover the entirety of the distributions").

[30] Plaza Bank v. Alan Green Family Trust, Case No. 2:11-cv-130-RCJ-RJJ, 2011 U.S. Dist. LEXIS 82802, *23 (D. Nev. Jul. 26, 2011) ("an action for fraudulent conveyance is akin to a tort"); Atsco Ltd. v. Swanson, 29 A.D.3d 465, 465, 816 N.Y.S.2d 31 (1st Dep't 2006) (referencing the "tort of fraudulent conveyance").

Exhibit 1

**EXHIBIT 1**

| First Cause of Action | Second Cause of Action |
|---|---|
| 59.  Third-Party Plaintiffs incorporate as if fully set forth here the facts and allegations previously and hereafter set forth in this Third-Party Complaint. | 70. Identical |
| 60.  Third-Party Defendants furnished written and oral information to Third-Party Plaintiffs. Third-Party Defendants prepared these documents and made these representations (including but not limited to the Total Net Value appraisals) with specific knowledge and intent that said documents would be distributed to Third-Party Plaintiffs in order to induce them to enter into the aforesaid Credit Facility Agreements and resulting $500MM Credit Facility.  Third-Party Plaintiffs were foreseeable recipients of said representations, and Third-Party Defendants knew and intended that they would rely on the Third-Party Defendants' representations, which Third-Party Defendants knew or should have known were false and misleading. | 72.  Third-Party Defendants furnished written and oral information to Third-Party Plaintiffs. Third-Party Defendants prepared these documents and made these representations (including but not limited to the Total Net Value appraisals) with specific knowledge and intent that said documents would be distributed to Third-Party Plaintiffs, in order to induce ~~them~~the Rhodes Homes enterprise to allow the Borrowers to enter into the aforesaid Credit Facility Agreements ~~and resulting $500MM Credit Facility~~.  Third-Party Plaintiffs were foreseeable recipients of said representations, and Third-Party Defendants knew or should have known and intended that they would rely on the Third-Party Defendants' representations, which Third-Party Defendants knew or should have known were false and misleading. |
| 61.  In connection with their respective proper business purposes in which they were lawfully engaged, Third-Party Plaintiffs received the appraisal and other written and oral presentations from Third-Party Defendants before entering into the financial transaction with Third-Party Defendants. Third-Party Plaintiffs also received the oral misstatements from the Third-Party Defendants, and were subject to the aforementioned materially misleading omissions of the Third-Party Defendants, in connection with said business purposes. | ~~73.~~ Identical |
| 62.  Third-Party Defendants each had a duty to provide Third-Party Plaintiffs with materially accurate information and disclosures, and each Third-Party Defendant had a duty to refrain from misrepresenting the terms of or the basis for the said loans and Credit Facility Agreements.  In violation of that duty, each Third-Party Defendant failed to exercise reasonable care in connection with the aforesaid transactions, appraisals, and the preparation, presentation, publication, and | ~~74.~~ Identical |

| First Cause of Action | Second Cause of Action |
|---|---|
| communication thereof to foreseeable users of said information. | |
| 63. Third-Party Defendants failed to exercise reasonable care in making the oral and written presentations to the Third-Party Plaintiffs. | ~~75.~~ Identical |
| 64. Third-Party Defendants had a substantial pecuniary interest in the completion of the aforesaid loans, and stood to receive substantial personal gain if the loan transaction was executed. | ~~76.~~ Identical |
| 65. Third-Party Defendants' aforesaid untrue statements and failures to disclose material facts related to matters of importance or significance to the decisions of the Third-Party Plaintiffs as to whether to enter into the said loan transaction with Third-Party Defendants, and caused them to accept Third-Party Defendants' proffered loan agreements, which caused harm and substantial economic damages to the Third-Party Plaintiffs. | ~~77.~~ Third-Party Defendants' aforesaid untrue statements and failures to disclose material facts related to matters of importance or significance to the decisions of the Third-Party Plaintiffs as to whether ~~to~~ the Borrowers should enter into the said loan transaction with Third-Party Defendants, and caused them to accept Third-Party Defendants' proffered loan agreements, which caused harm and substantial economic damages to the Third-Party Plaintiffs. |
| 66. The acts, omissions and conduct aforesaid of Third-Party Defendants, and each them, amounted to the commission of negligence. | ~~78.~~ Identical |
| 67. As a direct and proximate result of the Third-Party Defendants' breach of their duty and failure to exercise reasonable care, Third-Party Plaintiffs were caused, and continue to suffer, economic damages in an amount far in excess of $75,000 dollars to be proven at trial. | ~~80.~~ As a direct and proximate result of the Third-Party Defendants' ~~breach of their duty and failure to exercise reasonable care~~ misrepresentations, Third-Party Plaintiffs were caused, and continue to suffer, economic damages in an amount far in excess of $75,000 dollars to be proven at trial. |
| 68. Each of the Third-Party Defendants are jointly and severally liable to Third-Party Plaintiffs for their damages by virtue of their having collaborated in establishing, promoting and, implementing the Total Net Value scheme. | ~~81.~~ Identical |
| 69. Third-Party Plaintiffs are lawfully entitled to recover from the Defendants all of the economic damages that were caused them by the Third-Party Defendants' negligence and/or negligent misrepresentations and omissions of the facts pertinent to the aforesaid loan transaction and Credit Agreement, the amount of which damages will be proven at trial and which exceed $75,000 dollars. | ~~82.~~ Third-Party Plaintiffs are lawfully entitled to recover from the Third-Party Defendants all of the economic damages that were caused them by the Third-Party Defendants' negligence and/or negligent misrepresentations and omissions of the facts pertinent to the aforesaid loan transaction and Credit Agreement, the amount of which damages will be proven at trial and which far exceed $75,000 dollars. |

# CERTIFICATE OF SERVICE

1. On April 8, 2013, I served the foregoing document, **MOTION OF CREDIT SUISSE AG, CAYMAN ISLANDS BRANCH; CREDIT SUISSE SECURITIES (USA) LLC; CREDIT SUISSE HOLDINGS (USA), INC.; CREDIT SUISSE (USA), INC.; AND CREDIT SUISSE AG, NEW YORK BRANCH TO DISMISS RHODES ENTITIES' THIRD-PARTY COMPLAINT**

2. I served the above-named document(s) by the following means to the persons as listed below:

    X    a.    **ECF SYSTEM** *(You must attach the "Notice of Electronic Filing" or list all persons and addresses and attach additional paper if necessary):*

- JUSTIN L. CARLEY jcarley@swlaw.com, jforrest@swlaw.com;DOCKET_LAS@swlaw.com
- CAROL L. HARRIS c.harris@kempjones.com, ade@kempjones.com;srd@kempjones.com
- WILLIAM H HEATON will@nwhltd.com, Solana@nwhltd.com
- ERIC D. MADDEN emadden@diamondmccarthy.com, cburrow@diamondmccarthy.com
- W. OWEN NITZ owen@nwhltd.com, jim@nwhltd.com
- JACOB J ROBERTS jroberts@diamondmccarthy.com, cburrow@diamondmccarthy.com
- BRIAN D. SHAPIRO bshapiro@brianshapirolaw.com, ecf@brianshapirolaw.com;brianshapiroesq@yahoo.com;bshapiro@brianshapirolaw.com;candice@brianshapirolaw.com;carolyn@brianshapirolaw.com
- JEFFREY R. SYLVESTER jeff@sylvesterpolednak.com, tina@sylvesterpolednak.com;bridget@sylvesterpolednak.com
- ELIZABETH W. WALKER ewalker@sidley.com, hnugget@sidley.com
- MICHAEL YODER myoder@diamondmccarthy.com, cburrow@diamondmccarthy.com

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 8th day of April, 2013

Heather Dooley Nugget              /s/ Heather Dooley Nugget
    Name                            Signature

Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
Email: oatamoh@nevadafirm.com
COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:        702/791-0308
Facsimile:        702/791-1912

Sawnie A. McEntire, Esq.
Email: smcentire@bmpllp.com
Trent L. Rosenthal, Esq.
Email: trosenthal@bmpllp.com
David A. Walton, Esq.
Email: dwalton@bmpllp.com
Robert M. Rosen, Esq.
Email: rrosen@bmpllp.com
BEIRNE, MAYNARD & PARSONS, L.L.P.
1700 Pacific Avenue, Suite 4400
Dallas, TX  75201
Telephone 214-237-4300
Facsimile 214-237-4340
(*Pro Hac Vice Application to be filed*)

*Attorneys for Third-Party Defendants Cushman & Wakefield, Inc.,
Cushman & Wakefield of Texas, Inc., and Cushman & Wakefield of Nevada, Inc.*

E-filed on: <u>April 8, 2013</u>

## UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 09-14814-LBR<br>Chapter 11 |
| THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al., | |
| Reorganized Debtors. | |
| THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC, et al., | Adv. No. 12-01099-LBR |
| Plaintiff, | **MOTION TO DISMISS UNDER RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MEMORANDUM OF LAW** |
| v. | |
| JAMES M. RHODES; ET AL., | Date of Hearing:        June 10, 2013<br>Time of Hearing:        10:00 a.m.<br>Place: Courtroom No. 1, Third Floor |
| Defendants. | Foley Federal Building<br>300 Las Vegas Blvd., S. |
| JAMES M. RHODES, SAGEBRUSH ENTERPRISES, INC., JOHN C. RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I, JOHN C. RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST II, and RHODES RANCH, LLC, | Las Vegas, NV 89101<br><br><br>Judge: Hon. Linda B. Riegle |
| Third-Party Plaintiffs, | |

09911-01/1055690_2.doc

1     v.

2     CREDIT SUISSE AG, a Swiss corporation; ET
      AL.,

3

4     _____
                        Third-Party Defendants.

### MOTION TO DISMISS UNDER RULE 12(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE AND MEMORANDUM OF LAW

6     Third-Party Defendants CUSHMAN & WAKEFIELD, INC. ("CW"), CUSHMAN &

7     WAKEFIELD OF TEXAS, INC. ("CW-TX"), and CUSHMAN & WAKEFIELD OF NEVADA,

8     INC. ("CW-NV") (collectively, the "Cushman Entities"), by and through counsel, Beirne,

9     Maynard & Parsons, L.L.P. and Cotton, Driggs, Walch, Holley, Woloson & Thompson, hereby

10    file their Motion to Dismiss under Rule 12(b) of the Federal Rules of Civil Procedure and

11    Memorandum of Law in support thereof (the "Motion to Dismiss"), pursuant to Rule 7012 of the

12    Federal Rules of Bankruptcy Procedure.

### RESERVATION AND PRELIMINARY STATEMENT

14    The Cushman Entities do not consent to the entry of any final orders or judgments by the

15    Bankruptcy Court concerning the non-core, state law claims alleged in the Third-Party

16    Complaint. The Cushman Entities state that all matters alleged in the Third-Party Complaint

17    against the Cushman Entities are non-core, state law claims. Subject to and without waiving their

18    Motion to Dismiss, CW-TX and CW-NV are also separately submitting their Demand for Jury

19    Trial demanding a jury trial on all issues on which they are entitled under the Seventh

20    Amendment to the U.S. Constitution.

### RELEVANT PROCEDURAL FACTS

22    1.     On either March 31, 2009 and April 1, 2009 (collectively, the "Filing Date"), each

23    of the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions under

24    Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

25    2.     On February 18, 2010, the First Lien Steering Committee filed a Third Amended

26    Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The Rhodes

27    Companies, LLC, et. al. (the "Third Amended Plan"). (See Third Amended Plan [Doc. 1013,

28    Case No. 09-14814-LBR] dated February 18, 2010) The Third Amended Plan established the

- 2 -

Litigation Trust of The Rhodes Companies, LLC et al. (the "Litigation Trust") to "enforce all rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising before or after the Petition Date." (*See* Third Amended Plan [Doc. 1013, Case No. 09-14814-LBR] at p. 36 of 72, Article IV.P.)

3.      On March 19, 2010, the Bankruptcy Court entered an Order Confirming the Third Amended Plan (the "Confirmation Order"). (*See* Confirmation Order [Doc. 1060, Case No. 09-14814-LBR] dated March 19, 2010.) The Confirmation Order states that the Third Amended Plan was substantially consummated on the "Effective Date." (*Id.* at p. 18 of 120, ¶ 31.)

4.      On May 11, 2012, the Litigation Trust commenced this adversary proceeding by filing its Original Complaint (the "Original Complaint") against the above-captioned defendants. (*See* Original Complaint [Doc. 1, Case No. 12-01099-LBR] dated May 11, 2012.)

5.      On January 25, 2013, the above-captioned Third-Party Plaintiffs (collectively, "Third-Party Plaintiffs") filed their Third-Party Complaint and Demand for Jury Trial (the "Third-Party Complaint") against the Cushman Entities, and numerous entities related to Credit Suisse AG (collectively, the "Credit Suisse Entities"). (*See* Third-Party Complaint [Doc. 178, Case No. 12-01099-LBR] dated January 25, 2013.)

6.      The Third-Party Complaint asserts limited causes of action against the Cushman Entities: negligence-based claims and equitable indemnity and contribution claims. All causes of action asserted against the Cushman Entities, however, are non-core, state law claims that do not arise from or relate to the Debtors' Chapter 11 case.

**MOTION TO DISMISS**

The Third-Party Complaint is pled entirely in the alternative. It alleges that the Third-Party Plaintiffs, consisting of persons and entities affiliated with the Debtors and the developers of a master planned resort community known as Rhodes Ranch in Las Vegas, Nevada, may be subject to liability as a result of the pending claims of the Litigation Trust alleging that distributions of loan proceeds were improperly diverted or fraudulently conveyed to the Third-Party Plaintiffs and others. Third-Party Plaintiffs allege, as to the Cushman Entities, that the Cushman Entities were negligent in providing a "total net value" appraisal of Rhodes Ranch as

- 3 -

1    requested by Credit Suisse. Third-Party Plaintiffs also allege that they were allegedly induced by

2    Credit Suisse into believing that the loan was "collateralized by equity based real estate

3    'appraisals' in conformity with traditional banking industry standards."

4    The Third-Party Complaint should be dismissed for one or more of the following reasons:

5    (1) under Rule 12(b)(1) since no subject matter jurisdiction exists over any of the non-core, state

6    law claims alleged against the Cushman Entities since such claims are not related to or arising

7    under the Debtors' chapter 11 case; (2) under Rule 12(b)(2) as to CW since no personal

8    jurisdiction exists over CW due to an absence of facts supporting either the exercise of specific

9    or general jurisdiction in Nevada as the forum state; (3) under Rule 12(b)(6) since the Third-

10   Party Complaint fails to state a viable negligence-based claim against the Cushman Entities

11   because it is time barred under the applicable statute of limitations; and (4) under Rule 12(b)(6)

12   because the Third-Party Complaint fails to state a viable claim for equitable indemnity as a

13   matter of law. Pleading in the alternative, to the extent necessary, under Rule 12(e) under the

14   Federal Rules of Civil Procedure, Third-Party Plaintiffs should be required to re-plead against

15   each of the Cushman Entities to avoid any prejudice caused by the currently vague and

16   ambiguous Third-Party Complaint.

17

18   **MEMORANDUM OF LAW**

19   **1.    LACK OF SUBJECT MATTER JURISDICTION OVER THE CUSHMAN ENTITIES.**

20   The Third-Party Complaint must be dismissed in its entirety because this Court lacks

21   subject matter jurisdiction over the claims asserted against the Cushman Entities.

22   **A.    Rule 12(b)(1) Standard.**

23   Federal Rule of Civil Procedure 12(b)(1) provides that a court may dismiss a claim for

24   lack of subject-matter jurisdiction. FED. R. CIV. P. 12(b)(1). Although the defendant is the

25   moving party in a motion to dismiss, the plaintiff is the party invoking the court's jurisdiction.

26   As a result, a plaintiff bears the burden of proving that the case is properly in federal court.

27   *McCauley v. Ford Motor Co.,* 264 F.3d 952, 957 (9th Cir. 2001) (*citing McNutt v. General*

28   *Motors Acceptance Corp.,* 298 U.S. 178, 189 (1936)). In addressing a motion to dismiss for lack

- 4 -

09911-01/1055690_2.doc

1   of subject matter jurisdiction, a district court may consider evidence outside the pleadings. *See*

2   *Farr v. United States,* 990 F.2d 451 (9th Cir. 1993).

3   **B.   Jurisdiction of the Bankruptcy Courts.**

4   "The jurisdiction of the bankruptcy courts, like that of other courts, is grounded in and

5   limited by statute." *In re Casamont Investors, Ltd.,* 196 B.R. 517, 521 (9th Cir. BAP 1996)

6   (citing *Celotex Corp. v. Edwards,* 514 U.S. 300, 115 S.Ct. 1493, 1498, 131 L.Ed.2d 403 (1995)).

7   Subsection (a) of 28 U.S.C. § 157 provides that a district court "may provide that any or all cases

8   under title 11 and any or all proceedings arising under title 11 or arising in or related to a case

9   under title 11 shall be referred to the bankruptcy judge for the district." Similarly, 28 U.S.C. §

10  1334 allows a district court to abstain from hearing a proceeding "arising under title 11, or

11  arising in or related to cases under title 11."

12  **C.   The Non-Core, State Law Claims of the Third-Party Complaint.**

13  The bankruptcy court is required to determine, *sua sponte* or on timely motion of a party,

14  whether the proceeding is either "core" or "non-core." *See* 28 U.S.C. § 157(b)(3). "Core

15  proceedings are actions by or against the debtor that arise under the Bankruptcy Code in the

16  strong sense that the Code itself is the source of the claimant's right or remedy, rather than just

17  the procedural vehicle for the assertion of a right covered by some other body of law, normally

18  state law." *In re Professional Satellite and Communication, LLC*, No. 12-cv-70-L (MDD), 2012

19  WL 6012829, at *2 (S.D. Cal. Dec. 3 2012) (citing *Matter of U.S. Brass Corp.*, 110 F.3d 1261,

20  1268 (7th Cir. 1997)). Nonexclusive examples of "core proceedings" include matters concerning

21  the administration of the estate, allowance and disallowance of claims, counterclaims by the

22  estate against persons filing claims against the estate, proceedings to recover preferences and

23  fraudulent transfers, and a litany of other matters not implicated here. *See* 28 U.S.C. § 157(b)(2).

24  By contrast, the Ninth Circuit has held that "a proceeding is non-core if they do not depend on

25  the Bankruptcy Code for their existence and they could proceed in another court." *Dunmore v.*

26  *US*, 358 F.3d 1107, 1114 (9th Cir. 2004).

27  The current claims for negligence, equitable indemnity, and contribution against the

28  Cushman Entities are undeniably non-core. These claims, which the Cushman Entities deny,

- 5 -

09911-01/1055690_2.doc

1  involve common-law causes of action arising out of allegations that the Cushman Entities were

2  purportedly negligent in providing a "total net value" appraisal of Rhodes Ranch as requested by

3  Credit Suisse. These non-core, state law claims involve private rights and do not depend on the

4  Bankruptcy Code for their existence.

5      Thus, the question turns to whether the non-core, state law claims in the Third-Party

6  Complaint arise in or relate to a case under title 11 of the Bankruptcy Code or the underlying

7  bankruptcy case. A matter "arises under" the Bankruptcy Code if its existence depends on a

8  substantive provision of bankruptcy law – that is, if it involves a cause of action created or

9  determined by a statutory provision of the Bankruptcy Code. *In re Harris,* 590 F.3d 730, 737

10  (9th Cir. 2009); *In re Eastport Assocs.,* 935 F.2d 1071, 1076 (9th Cir.1991) (citing *In re Wood,*

11  825 F.2d 90, 96 (5th Cir. 1987)). A proceeding "arises in" a case under the Bankruptcy Code if it

12  is an administrative matter unique to the bankruptcy process that has no independent existence

13  outside of bankruptcy and could not be brought in another forum, but whose cause of action is

14  not expressly rooted in the Bankruptcy Code. *See In re Marshall,* 600 F.3d 1037, 1054-55 (9th

15  Cir. 2010).

16      If it is a "non-core" proceeding, the bankruptcy court must then determine if it is "related

17  to" a case under the bankruptcy code. *Id.* Adopting the definition of "related to" articulated by

18  the Third Circuit, the Ninth Circuit stated:

19          The usual articulation of the test for determining whether a civil
              proceeding is related to bankruptcy is whether *the outcome of the*

20          *proceeding could conceivably have any effect on the estate being*
              *administered in bankruptcy.* [citations omitted]. Thus, the

21          proceeding need not necessarily be against the debtor or against the
              debtor's property. An action is related to bankruptcy if the outcome

22          could alter the debtor's rights, liabilities, options, or freedom of
              action (either positively or negatively) and which in any way

23          impacts upon the handling and administration of the bankrupt
              estate.

24

25  *See In re Fietz,* 852 F.2d 455, 457 (9th Cir. 1988) (quoting *Pacor, Inc. v. Higgins,* 743 F.2d 984,

26  994 (3d Cir. 1984)). Furthermore, post-confirmation jurisdiction is much more limited than pre-

27  confirmation jurisdiction. In post-confirmation situations, there must be a "close nexus" to the

28

- 6 -

1  bankruptcy case for post-confirmation "related to" jurisdiction. *See In re Pegasus Gold Corp.*,

2  394 F.3d 1189, 1193-94 (9th Cir. 2005).

3  Here, the claims against the Cushman Entities are state law claims based on allegations

4  independent of the bankruptcy case. They do not "arise under" the Bankruptcy Code.

5  Furthermore, these state law claims do not depend on an administrative matter unique to the

6  bankruptcy process. The current claims could be brought in another forum and, therefore, they

7  do not "arise in" a case under the Bankruptcy Code.

8  The resolution of the state law claims asserted against the Cushman Entities, which are

9  unrelated to the underlying bankruptcy case, will not have any effect on the bankruptcy estate. In

10  fact, the reorganization plan was already confirmed well *before* the Third-Party Complaint was

11  filed. Thus, there is no conceivable relationship between the outcome of the Third-Party

12  Complaint and the administration of the bankruptcy estate. *See In re Fietz*, 852 F.2d at 458.

13  Finally, CW-TX and CW-NV have demanded a jury trial, subject to its jurisdictional

14  challenges, and do not consent to entry of final orders or judgments by the bankruptcy court. *See*

15  *Stern v. Marshall*, 131 S. Ct. 2594, 180 L.Ed.2d 475 (2011). Under *Stern,* therefore, the

16  Bankruptcy Court lacks the constitutional authority to adjudicate the claims against the Cushman

17  Entities absent consent since such claims involve "private rights" as opposed to public rights

18  created by the bankruptcy laws.

19  In sum, the Court does not have subject matter jurisdiction. There is also no separate

20  basis for subject matter jurisdiction in the district court over these state law claims since there is

21  no diversity or federal question jurisdiction. Accordingly, Third-Party Defendants CW, CW-TX,

22  and CW-NV move this Court to dismiss all claims of the Third-Party Plaintiffs for lack of

23  subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure

24  applicable to bankruptcy cases under Rule 7012 of the Federal Rules of Bankruptcy Procedure.

25
26  **2.    LACK OF PERSONAL JURISDICTION OVER CUSHMAN & WAKEFIELD, INC.**

27  The Third-Party Complaint must be dismissed as to CW because this Court lacks

28  personal jurisdiction over CW.

- 7 -

09911-01/1055690_2.doc

## A.    Rule 12(b)(2) Standard.

Under Rule 12(b)(2) of the Federal Rules of Civil Procedure, a defendant may move to dismiss an action for lack of personal jurisdiction. "Where a defendant moves to dismiss a complaint for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that jurisdiction is appropriate." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). A court may consider evidence presented in affidavits to assist in its determination. *See Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977). The court must analyze whether personal jurisdiction exists over each defendant separately. *See Harris Rutsky & Co. Ins. Services, Inc. v. Bell & Clements Ltd.,* 328 F.3d 1122, 1130 (9th Cir. 2003).

The Ninth Circuit follows a two-step test to determine the propriety of asserting personal jurisdiction over an out-of-state defendant. The plaintiff must first demonstrate that (1) personal jurisdiction is permitted under the applicable state's long-arm statute; and (2) the exercise of personal jurisdiction does not violate federal due process. *See Pebble Beach Co. v. Caddy,* 453 F.3d 1151, 1154 (9th Cir.2006). Where a forum state's long-arm statute provides its courts jurisdiction to the fullest extent of the Due Process Clause of the Fourteenth Amendment, such as in Nevada, *see Arbella Mut. Ins. Co. v. Eighth Judicial Dist. Court,* 134 P.3d 710, 712 (Nev.2006) (citing NEV. REV. STAT. § 14.065), a court need only apply federal due process standards, *see Boschetto v. Hansing,* 539 F.3d 1011, 1015 (9th Cir. 2008).

There are two types of personal jurisdiction that a court may have over a non-resident defendant: general jurisdiction and specific jurisdiction. *See Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414–15 (1984); *see also Reebok Int'l Ltd. v. McLaughlin,* 49 F.3d 1387, 1389 (9th Cir. 1995).

## B.    General Jurisdiction.

A court may exercise general jurisdiction only if the non-resident defendant's contacts with the forum state are purposeful and "continuous and systematic." *Helicopteros,* 466 U.S. at 414–16. It is not necessary that the specific cause of action alleged be connected with the defendant's business relationship to the forum because "[g]eneral jurisdiction provides for jurisdiction without consideration of the claim asserted, if a defendant's activities in the forum

- 8 -

1    state can fairly be characterized as 'continuous and systematic.' " *Graziose v. American Home*

2    *Products Corp.,* 161 F. Supp. 2d 1149, 1152 (D. Nev. 2001) (citing *Helicopteros,* 466 U.S. at

3    414). "Factors to be taken into consideration are whether the defendant makes sales, solicits or

4    engages in business in the state, serves the state's markets, designates an agent for service of

5    process, holds a license, or is incorporated there." *Bancroft & Masters, Inc. v. Augusta Nat'l,*

6    *Inc.,* 223 F.3d 1082, 1086 (9th Cir. 2000).

7            **C.**      **Specific Jurisdiction.**

8            Specific jurisdiction exists when there are sufficient minimal contacts with the forum

9    state such that assertion of personal jurisdiction "does not offend 'traditional notions of fair play

10    and substantial justice.' " *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. &*

11    *Placement,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)). The

12    Ninth Circuit has developed a three-part test for specific jurisdiction:

13           (1)     the non-resident defendant must purposefully direct his activities or consummate

14                  some transaction with the forum or resident thereof; or perform some act by

15                  which he purposefully avails himself of the privilege of conducting activities in

16                  the forum thereby invoking the benefits and protections of its laws;

17           (2)     the claim must be one which arises out of or relates to the defendant's forum-

18                  related activities; and

19           (3)     the exercise of jurisdiction must comport with fair play and substantial justice, i.e.

20                  it must be reasonable.

21    *Boschetto,* 539 F.3d at 1016 (quoting *Schwarzenegger,* 374 F.3d at 802). "The plaintiff bears the

22    burden of satisfying the first [two] prongs of the test. If the plaintiff fails to satisfy either of these

23    prongs, personal jurisdiction is not established in the forum state." *See Schwarzenegger*, 374

24    F.3d at 800.

25            **D.**      **Jurisdictional Allegations in the Third-Party Complaint.**

26            In this case, Third-Party Plaintiffs bear the burden of establishing the district court's

27    personal jurisdiction over Cushman & Wakefield, Inc. ("CW"). *Harris Rutsky & Co.,* 328 F.3d at

28    1128–29. The Third-Party Complaint correctly alleges that CW is "a privately held New York

09911-01/1055690_2.doc

1    corporation with its principal place of business in New York." (Third-Party Complaint, Doc.

2    178, at p. 5, ¶ 11.). Thereafter, Third-Party Plaintiffs' jurisdictional allegations are limited to

3    subject-matter jurisdiction and, undeniably, fall far short of satisfying the burden of pleading

4    personal jurisdiction over CW. Indeed, this burden cannot be factually satisfied.

5            CW does not have the requisite degree of minimum contacts. CW does not have offices

6    in Nevada; it has not done business in Nevada; it owns no property in Nevada; it sells no

7    products in Nevada; it conducts no business in Nevada. Moreover, CW is neither domiciled in

8    nor organized under the laws of Nevada, and does not maintain its principal place of business in

9    Nevada. As Third-Party Plaintiffs concede, CW is a New York corporation.

10           The exercise of personal jurisdiction over CW may not be based upon contacts with

11   Nevada of another corporate entity with which CW may be affiliated, such as CW-NV and/or

12   CW-TX. *See Cannon Mfg. Co. v. Cudahy Packing Co.*, 267 U.S. 333, 335, 45 S. Ct. 250, 69

13   L.Ed. 634 (1925) (declining to attribute, for jurisdictional purposes, the presence of a subsidiary

14   in the forum state to a nonresident parent corporation where the parent and subsidiary maintained

15   distinct and separate corporate entities); *In re Western States Wholesale Natural Gas Litigation*,

16   605 F. Supp. 2d 1118, 1132-34 (D. Nev. 2009) (parent corporation and its subsidiary did not lack

17   corporate separateness required for subsidiary's forum contacts to be attributed to parent under

18   alter ego theory for purposes of establishing personal jurisdiction over parent in antitrust action,

19   even though parent provided financing to subsidiary and they shared office space and staff, given

20   that parent maintained corporate formalities and properly documented loans and capital

21   contributions made to subsidiary, that parent had in place specific policies regarding when it

22   would act as subsidiary's guarantor, demonstrating that they were viewed as separate entities

23   generally not liable for each other's obligations, that parent's oversight of subsidiary was

24   consistent with its investor status, and that parent had little to no role in subsidiary's daily

25   operations); *see, e.g., Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406 (9th Cir.

26   1977).

27           Accordingly, Third-Party Defendant CW moves this Court to dismiss all claims asserted

28   against CW for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil

- 10 -

09911-01/1055690_2.doc

1  Procedure applicable to bankruptcy cases under Rule 7012 of the Federal Rules of Bankruptcy

2  Procedure.

3  **3.  FAILURE TO STATE A CLAIM AGAINST THE CUSHMAN ENTITIES.**

4  The negligence-based allegations in the Third-Party Complaint against the Cushman

5  Entities must be dismissed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

6  since such claims were filed outside the applicable statute of limitations. In addition, the

7  equitable indemnity claims in the Third-Party Complaint against the Cushman Entities must be

8  dismissed pursuant to Rule 12(b)(6) since such claims fail as a matter of law.

9  **A.  Rule 12(b)(6) Standard.**

10  The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of

11  the complaint. *See Navarro v. Block,* 250 F.3d 729, 732 (9th Cir. 2001). Dismissal under Rule

12  12(b)(6) is proper when a complaint exhibits either a "lack of a cognizable legal theory or the

13  absence of sufficient facts alleged under a cognizable legal theory." *Balistreri v. Pacifica Police*

14  *Dept.,* 901 F.2d 696, 699 (9th Cir. 1988). The court must accept as true all material allegations in

15  the complaint as well as all reasonable inferences that may be drawn from such allegations. *See*

16  *LSO, Ltd. v. Stroh,* 205 F.3d 1146, 1150 (9th Cir. 2000). The court also must construe the

17  allegations of the complaint in the light most favorable to the nonmoving party. *See Shwarz v.*

18  *United States,* 234 F.3d 428, 435 (9th Cir. 2000).[1] The court is not, however, required to accept

19  as true conclusory allegations, unwarranted factual deductions, or unreasonable inferences. *See*

20  *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). Bare assertions, which are

21  no more than a "formulaic recitation" of the elements of a claim, are not entitled to an

22  assumption of truth. *See Moss v. U.S. Secret Svs.,* 572 F.3d 962, 969 (9th Cir. 2009) (internal

23  citation omitted). Similarly, "[a] pleading that offers 'labels and conclusions' ... will not do."

24  *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009) (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544,

25  555 (2007)).

26  . . .

27  _____

[1] The Cushman Entities deny any liability to Third-Party Plaintiffs and deny all material allegations asserted against
28  them.

09911-01/1055690_2.doc

1    "Dismissal on statute of limitations grounds can be granted pursuant to FED. R. CIV. P.

2    12(b)(6) 'only if the assertions of the complaint, read with the required liberality, would not

3    permit the plaintiff to prove that the statute was tolled.' " *TwoRivers v. Lewis,* 174 F.3d 987, 991

4    (9th Cir. 1999) (quoting *Vaughn v. Grijalva,* 927 F.2d 476, 478 (9th Cir. 1991)).

5         **B.    Applicable Statute of Limitations Bars the Negligence-Based Claims.**

6         The Third-Party Complaint describes the relevant time period as "starting in mid-2005"

7    and "continuing through the closing of the loan transaction on November 21, 2005" and

8    "continuing until mid-2008." (*See* Third-Party Complaint, Doc. 178, at p. 12, ¶ 38.) The Third-

9    Party Complaint also relies on the "appraisal" as the sole basis for the Third-Party Plaintiff's

10   allegations against the Cushman Entities, based on limited allegations as follows:

11        • To determine and justify the loan amounts, Credit Suisse allegedly hired the firm
             Cushman & Wakefield to perform a Project appraisal. Based on a "total net
12           value" methodology suggested by Credit Suisse, Cushman & Wakefield appraised
             the Project's total net value at approximately $1.6 billion. (*Id.* at p. 13, ¶ 43);
13

14        • Cushman & Wakefield's "appraisals" were allegedly not appraisals at all, but
             undiscounted financial projections. (*Id.* at p. 11, ¶ 33);
15

16        • Third-Party Plaintiffs allege that they are now informed and believe that the
             "Total Net Value" appraisal Cushman & Wakefield performed was allegedly
17           based on a methodology that was not a market value appraisal as required under
             applicable federal and state law, namely … FIRREA … USPAP … and banking
18           and industry standards. (*Id.* at p. 14, ¶ 44).

19        However, Third-Party Plaintiffs admit that the appraisal made the basis of Third-Party

20   Plaintiffs' allegations was completed by no later than November 21, 2005 – that is, the date of

21   the loan agreement. (*Id.* at p. 14, ¶ 45.) Moreover, Third-Party Plaintiffs allege that, as of

22   November 21, 2005, the appraisal "did not provide a present value discount" and that the

23   Lenders would "perform for themselves whatever quantification and analysis they believed

24   necessary to assess the risks and value of the loan, including determining the appropriate

25   discount rate to apply to the Cushman & Wakefield projected cash flows." (*Id.* at p. 13, ¶ 43.)

26   Thus, for purposes of this Motion to Dismiss and the Court's standard of review under Rule

27   12(b)(6), the Third-Party Complaint effectively admits that Third-Party Plaintiffs either knew or

28   should have known in 2005 of alleged facts that the appraisal was "not a market value appraisal."

1         Under any applicable Nevada statute of limitations (two-years, three-years or four-years),

2 Third-Party Plaintiffs had to commence their negligence-based claim against the Cushman

3 Entities long before January 25, 2013. *See Brant v. Shea Mortg., Inc.,* No. 2:10-cv-771 JCM

4 (RJJ), 2010 WL 3154565 at *2 (D. Nev. Aug. 6, 2010) (applying two-year statute of limitations

5 under N.R.S. § 11.190(4)(e) for similar negligence-based claims); *see Lund v. Harborview*

6 *Mortg. Loan Trust Mortg. Loan*, No. 2:11-cv-00384-RLH-RJJ, 2011 WL 4344003 at *2 (D. Nev.

7 Sept. 14, 2011) (applying three-year statute of limitations under N.R.S. § 11.190(3)(d) to

8 negligence-based claims); *see Hannenman v. Downer*, 110 Nev. 167, 181 n. 8 (Nev. 1994)

9 (applying four-year statute of limitations under N.R.S. § 11.220 to negligence-based claim).

10         The statute of limitation necessarily ran by the time Third-Party Plaintiffs filed their

11 negligence-based claims against the Cushman Entities on January 23, 2013. Accordingly, Third-

12 Party Defendants CW-NV, CW, and CW-TX move this Court to dismiss all negligence-based

13 claims against the Cushman Entities for failure to state a claim pursuant to Rule 12(b)(6) of the

14 Federal Rules of Civil Procedure applicable to bankruptcy cases by Rule 7012 of the Federal

15 Rules of Bankruptcy Procedure.

16

17         **C.**     **The Equitable Indemnity Claims Against the Cushman Entities Fail as a Matter of Law.**

18         Third-Party Plaintiffs contend that "based upon the active and primary wrongful conduct

19 of the Third-Party Defendants … Third-Party Plaintiffs are entitled to complete and total

20 indemnification by the Third-Party Defendants from any liability of any kind that may be

21 imposed upon Third-Party Plaintiffs." (Third-Party Complaint, at p. 21, ¶ 85.).

22         "The remedies of contribution and implied, i.e., noncontractual indemnity allow parties

23 extinguishing tort liabilities by way of settlement or payment of judgments to seek recovery from

24 other potential tortfeasors under equitable principles." *The Doctors Co. v. Vincent,* 120 Nev. 644,

25 651, 98 P.3d 681, 686 (Nev.2004). "In order for one tortfeasor to be in a position of secondary

26 responsibility vis-a-vis another tortfeasor, and thus be entitled to indemnification, there must be a

27 preexisting legal relation between them, or some duty on the part of the primary tortfeasor to

28 protect the secondary tortfeasor." *Black & Decker (U.S.), Inc. v. Essex Group, Inc.*, 775 P.2d

1    698, 700 (Nev. 1989); *see Rodriguez v. Primadonna Co., LLC*, 216 P.3d 793, 801 (Nev. 2009)

2    (finding that "implied indemnity is an equitable remedy … to address the unfairness which

3    results when one party, who has committed no independent wrong, is held liable for the loss of a

4    plaintiff caused by another party").

5           Third-Party Plaintiffs have no legal or factual basis for claiming equitable indemnity

6    from the Cushman Entities. No duty exists on the part of the Cushman Entities to Third-Party

7    Plaintiffs. In addition, Third-Party Plaintiffs' claims against the Cushman Entities are pled in the

8    alternative and are necessarily predicated upon the existence of their own liability which operates

9    as a bar to their equitable indemnity claim against the Cushman Entities because Third-Party

10   Plaintiffs will have been found to have committed an "independent wrong."

11          Accordingly, Third-Party Defendants CW-NV, CW, and CW-TX move this Court to

12   dismiss all equitable indemnity claims against the Cushman Entities for failure to state a claim

13   pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure applicable to bankruptcy cases

14   by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

15   **4.      MORE DEFINITE STATEMENT OF THIRD-PARTY COMPLAINT.**

16          Pleading in the alternative, to the extent necessary, the Third-Party Complaint fails to

17   sufficiently plead causes of action against each of the Cushman Entities such that the Cushman

18   Entities are currently unable to reasonably prepare a response without resulting in prejudice.

19   **A.      Rule 12(e) Standard.**

20          Rule 12(e) of the Federal Rules of Civil Procedure provides that a party may file a motion

21   for a more definite statement if a pleading "is so vague or ambiguous that the party cannot

22   reasonably prepare a response." A court properly grants a motion for more definite statement

23   where the complaint is so vague or ambiguous that the opposing party cannot respond, even with

24   a simple denial, in good faith or without prejudice to himself. *See Comm. for Immigrant Rights*

25   *of Sonoma Cty. v. Cty. of Sonoma,* 644 F. Supp. 2d 1177, 1191 (N.D. Cal. 2009). Whether to

26   grant a Rule 12(e) motion is a matter committed largely to the discretion of the district court. *See*

27   *McHenry v. Renne,* 84 F.3d 1172, 1179 (9th Cir.1996).

28   . . .

- 14 -

09911-01/1055690_2.doc

1     **B.    The Vague and Ambiguous Third-Party Complaint.**

2          Here, the only causes of action alleged against the Cushman Entities are: (1) negligence

3     based claims, (2) equitable indemnity, and (3) contribution. However, the Third-Party Complaint

4     does not explicitly set forth any alleged facts to support each of the causes of action asserted

5     against each of the Cushman Entities. Instead, Third-Party Plaintiffs rely upon a general

6     recitation of the basic elements of these causes of action blended with vague allegations

7     "lumped" together against all Third-Party Defendants in conclusory fashion.

8          The Third-Party Complaint refers to appraisals of "Cushman & Wakefield" (defined by

9     Third-Party Plaintiffs as CW, CW-TX, and CW-NV, collectively), prepared at the request of

10    Third-Party Defendant Credit Suisse, that were purportedly not compliant with traditional

11    banking standards, USPAP, and/or FIRREA. (*See* Third-Party Complaint, Doc. 178, at pp. 13-

12    14, ¶¶ 43-44.) The Third Party Complaint also refers to an alleged "special relationship" between

13    Third Party Plaintiffs and the Cushman Entities (*id.* at pp. 12-13, ¶ 38) and alleged

14    "misrepresentations" and/or "oral misstatements" made by the Cushman Entities to Third-Party

15    Plaintiffs (*id.* at p. 14, ¶ 45 & p. 17, ¶¶ 60-61). It is unclear, however, as to what specific

16    allegations are made against which Cushman Entity that purportedly created a "special

17    relationship". Similarly, it is unclear as to what specific "misrepresentations" and/or "oral

18    misstatements" were allegedly made by which Cushman Entity to each Third-Party Plaintiff.

19         Also, "the right of contribution exists only in favor of a tortfeasor who has paid more

20    than his or her equitable share of the common liability, and the tortfeasor's total recovery is

21    limited to the amount paid by the tortfeasor in excess of his or her equitable share." NEV. REV.

22    STAT. § 17.225(2); *see The Doctors Co.,* 98 P.3d at 686. If there is no judgment for injury against

23    the tortfeasor seeking contribution, the tortfeasor's right of contribution is barred unless the

24    tortfeasor has: (a) discharged by payment the common liability within the statute of limitations

25    period applicable to claimant's right of action against him or her and has commenced an action

26    for contribution within 1 year after payment; or (b) agreed while action is pending against him or

27    her to discharge the common liability and has within 1 year after the agreement paid the liability

28    and commenced an action for contribution. NEV. REV. STAT. § 17.285(4)(a)-(b).

- 15 -

1    Equitable indemnity is a theory similar to contribution under which a passive tortfeasor
2    can recover from an active tortfeasor any measure of damages for which the former has been
3    made liable to the plaintiff based on the latter's tortious acts. *See, e.g., Black & Decker (U.S.),*
4    775 P.2d at 699. The "remedy is available after the defendant has extinguished its own liability
5    through settlement or by paying a judgment." *Rodriguez,* 216 P.3d at 801. "A claimant seeking
6    equitable indemnity must plead and prove that: (1) it has discharged a legal obligation owed to a
7    third party; (2) the party from whom it seeks liability also was liable to the third party; and (3) as
8    between the claimant and the party from whom it seeks indemnity, the obligation ought to be
9    discharged by the latter." *Id.* The Nevada Supreme Court "adopted the warning found in *Pender*
10   *v. Skillcraft Industries, Inc.,* 358 So.2d 45, 47 (Fla.Dist.Ct.App. 1978), that implied
11   indemnification should not be construed as permission to open a floodgate for cross-claims
12   seeking indemnification where there is no connection between the cross-claimant [or third-party
13   plaintiff] and the party from whom indemnification is sought." *Id.* (internal quotations omitted);
14   *see also Scaffidi v. United Nissan,* 425 F. Supp. 2d 1159, 1172 (D. Nev. 2005) (holding that
15   Nevada law requires " 'a preexisting legal relation ... or some duty on the part of the primary
16   tortfeasor to protect the secondary tortfeasor' " for equitable indemnity to apply) (quoting *Black*
17   *& Decker (U.S.),* 775 P.2d at 700).

18   In this case, the Third-Party Complaint alleges in conclusory fashion that any liability
19   against Third-Party Plaintiffs "is based upon the active [and primary] wrongful conduct of the
20   Third-Party Defendants" and that Third-Party Plaintiffs "are entitled to complete and total
21   indemnification [and contribution] by the Third-Party Defendants from any liability of any kind
22   that may be imposed upon Third-Party Plaintiffs." (Third-Party Complaint, Doc. 178, at p. 21, ¶
23   85 & p. 22, ¶ 89.) The Third Party Complaint, however, fails to plead sufficient facts indicating
24   any duty of care owed by any Cushman Entity to any Third-Party Plaintiff and/or any nexus or
25   special relationship between any Cushman Entity and any Third-Party Plaintiff. *See Black &*
26   *Decker (U.S.)*, 775 P.2d at 699-700; *Rodriguez,* 216 P.3d at 802.

27   Accordingly, and in the alternative, Third-Party Defendants CW-NV, CW, and CW-TX
28   move this Court to direct Third-Party Plaintiffs to adequately and properly plead the allegations

- 16 -

1   necessary against each of the Cushman Entities to allow each to frame a response without

2   potentially subjecting themselves to prejudice.

3                                  **CONCLUSION**

4           For the foregoing reasons, CUSHMAN & WAKEFIELD, INC., CUSHMAN &

5   WAKEFIELD OF TEXAS, INC., and CUSHMAN & WAKEFIELD OF NEVADA, INC.,

6   respectfully request that this Court dismiss the Third-Party Complaint, in whole or in part,

7   against the Cushman Entities as requested under Rule 12(b)(1), 12(b)(2), and/or 12(b)(6) of the

8   Federal Rules of Civil Procedure and/or, in the alternative, direct Third-Party Plaintiffs to

9   sufficiently plead the causes of action against each of the Cushman Entities under Rule 12(e) of

10  the Federal Rules of Civil Procedure, and also request such other and further relief to which they

11  may be entitled under the circumstances.

12          DATED this _____8th_____ day of April, 2013.

13                                         COTTON, DRIGGS, WALCH,
                                           HOLLEY, WOLOSON & THOMPSON
14

15                                         _____
                                           Richard F. Holley, Esq.
16                                         Nevada Bar No. 3077
                                           Ogonna M. Atamoh, Esq.
17                                         Nevada Bar No. 7589
                                           400 South Fourth Street, Third Floor
18                                         Las Vegas, Nevada 89101

19                                         AND
                                           Sawnie A. McEntire, Esq.
20                                         Trent L. Rosenthal, Esq.
                                           David A. Walton, Esq.
21                                         Robert M. Rosen, Esq.
                                           *(Application for Pro Hac Vice Admission*
22                                         *to be filed))*
                                           **BEIRNE, MAYNARD & PARSONS, L.L.P.**
23                                         1700 Pacific Avenue, Suite 4400
                                           Dallas, Texas 75201
24
                                           *Attorneys for Third-Party Defendants Cushman*
25                                         *& Wakefield, Inc., Cushman & Wakefield of*
                                           *Texas, Inc., and Cushman & Wakefield of*
26                                         *Nevada, Inc.*

27

28
                                           - 17 -

Richard F. Holley, Esq. (NV Bar No. 3077)
Email: rholley@nevadafirm.com
Ogonna M. Atamoh, Esq. (NV Bar No. 7589)
Email: oatamoh@nevadafirm.com
COTTON, DRIGGS, WALCH,
HOLLEY, WOLOSON & THOMPSON
400 South Fourth Street, Third Floor
Las Vegas, Nevada 89101
Telephone:       702/791-0308
Facsimile:       702/791-1912

Sawnie A. McEntire, Esq.
Email: smcentire@bmpllp.com
Trent L. Rosenthal, Esq.
Email: trosenthal@bmpllp.com
David A. Walton, Esq.
Email: dwalton@bmpllp.com
Robert M. Rosen, Esq.
Email: rrosen@bmpllp.com
BEIRNE, MAYNARD & PARSONS, L.L.P.
1700 Pacific Avenue, Suite 4400
Dallas, TX  75201
Telephone 214-237-4300
Facsimile 214-237-4340
(*Pro Hac Vice Application to be filed*)

*Attorneys for Third-Party Defendants Cushman & Wakefield of Texas, Inc.,
and Cushman & Wakefield of Nevada, Inc.*

E-filed on:  <u>April 8, 2013</u>

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

| | |
|---|---|
| In re | Case No. 09-14814-LBR |
| | Chapter 11 |
| THE RHODES COMPANIES, LLC, aka "Rhodes Homes," et al., | |
| Reorganized Debtors. | |
| THE LITIGATION TRUST OF THE RHODES COMPANIES, LLC, et al., | Adv. No. 12-01099-LBR |
| Plaintiff, | **MOTION TO WITHDRAW REFERENCE AND MEMORANDUM OF LAW** |
| v. | **RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE** |
| JAMES M. RHODES; ET AL., | |
| Defendants. | |
| JAMES M. RHODES, SAGEBRUSH ENTERPRISES, INC., JOHN C. RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST I, JOHN C. RHODES, TRUSTEE OF THE JAMES M. RHODES DYNASTY TRUST II, and RHODES RANCH, LLC, | |
| Third-Party Plaintiffs, | |

09911-01/1055802.doc

1        v.

2    CREDIT SUISSE AG, a Swiss corporation; ET AL.,

3

                Third-Party Defendants.

4

5      **MOTION TO WITHDRAW REFERENCE AND MEMORANDUM OF LAW**

6        **RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT JUDGE**

7          Third-Party Defendants CUSHMAN & WAKEFIELD OF TEXAS, INC. ("CW-TX")

8    and CUSHMAN & WAKEFIELD OF NEVADA, INC. ("CW-NV"), by and through their

9    counsel, Beirne, Maynard & Parsons, L.L.P. and Cotton, Driggs, Walch, Holley, Woloson &

10    Thompson, hereby file their Motion to Withdraw Reference Under Local Rule 5011 and

11    Memorandum of Law in support thereof (the "Motion to Withdraw Reference"). Also, as

12    required by Local Rule 5011(a), RELIEF IS SOUGHT FROM A UNITED STATES DISTRICT

13    JUDGE by and through the Motion to Withdraw Reference.

14        **RESERVATION AND PRELIMINARY STATEMENT**

15          This Motion to Withdraw Reference is made subject to and without waiving CW-TX's

16    and CW-NV's Motion to Dismiss the Third-Party Complaint. CW-TX and CW-NV separately

17    seek dismissal of the Third-Party Complaint on several grounds including, *inter alia,* lack of

18    subject matter jurisdiction and failure to state a claim against CW-TX and CW-NV.

19                **RELEVANT PROCEDURAL FACTS**

20        1.      On either March 31, 2009 and April 1, 2009 (collectively, the "Filing Date"), each

21    of the above-captioned debtors (collectively, the "Debtors") filed voluntary petitions under

22    Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

23        2.      On February 18, 2010, the First Lien Steering Committee filed their Third

24    Amended Plan of Reorganization Pursuant to Chapter 11 of the Bankruptcy Code for The

25    Rhodes Companies, LLC, et. al. (the "Third Amended Plan"). (*See* Third Amended Plan [Doc.

26    1013, Case No. 09-14814-LBR] dated February 18, 2010.) The Third Amended Plan established

27    the Litigation Trust of The Rhodes Companies, LLC et al. (the "Litigation Trust") to "enforce all

28    rights to commence and pursue, as appropriate, any and all Causes of Action, whether arising

1   before or after the Petition Date." (*See* Third Amended Plan [Doc. 1013, Case No. 09-14814-

2   LBR] at p. 36 of 72, Article IV.P.)

3        3.     On March 19, 2010, the Bankruptcy Court entered an Order Confirming the Third

4   Amended Plan (the "Confirmation Order"). (*See* Confirmation Order [Doc. 1060, Case No. 09-

5   14814-LBR] dated March 19, 2010.) The Confirmation Order states that the Third Amended

6   Plan was substantially consummated on the "Effective Date." (*Id.* at p. 18 of 120, ¶ 31.)

7        4.     On May 11, 2012, the Litigation Trust commenced the above-captioned adversary

8   proceeding by filing its Original Complaint (the "Original Complaint") against the above-

9   captioned defendants. (*See* Original Complaint [Doc. 1, Case No. 12-01099-LBR] dated May 11,

10   2012.) The Original Complaint asserts various causes of action against the Third-Party Plaintiffs

11   and others: (1) breach of fiduciary duty, (2) aiding and abetting breaches of fiduciary duty, (3)

12   alter ego / piercing the corporate veil, (4) unjust enrichment, (5) avoidance of constructively

13   fraudulent transfers under 11 U.S.C. § 544(b) and NRS §§ 112.180(1)(b) and 112.190, (6)

14   avoidance of transfers made with the actual intent to hinder, delay, or defraud under 11 U.S.C. §

15   544(b) and NRS §§ 112.180(1)(a), (7) avoidance of constructively fraudulent transfers under 11

16   U.S.C. § 548(a)(1)(B), (8) avoidance of transfers made with the actual intent to hinder, delay, or

17   defraud under 11 U.S.C. § 548(a)(1)(A), (9) recovery of avoidable transfers under 11 U.S.C. §

18   550, (10) declaratory judgment regarding Rhodes Ranch GP's 99% membership interest in

19   Gypsum Resources pursuant to NRS §§ 30.030 and 30.040, (11) turnover of a 99% membership

20   interest in Gypsum Resources under 11 U.S.C. § 542, and (12) avoidance of any transfers of

21   Rhodes Ranch GP's 99% membership interest in Gypsum Resources as a transfer made with

22   actual intent to hinder, delay, or defraud creditors of Rhodes Ranch GP under 11 U.S.C. § 544(b)

23   and NRS §§ 112.180. (*Id.* at pp. 41-61.)

24        5.     On June 29, 2012, Defendants filed their Motion for Withdrawal of Reference

25   seeking relief from the United States District Court. (Defendants' Motion for Withdrawal of

26   Reference [Doc. 66, Case No. 12-01099-LBR] dated June 29, 2012 or [Doc. 1, Case No. 12-

27   01272-MMD-VCF] dated July 17, 2012.) On November 7, 2012, the United States District Court

28   denied the withdrawal of reference and held that the Bankruptcy Court may issue reports and

1  recommendations on all pre-trial matters in this case involving the fraudulent transfer claims;
2  however, the jury trial must be conducted by the District Court. (Order [Doc. 20, Case No. 12-
3  01272-MMD-VCF] dated November 7, 2012.)

4        6.     On January 25, 2013, the above-captioned Third-Party Plaintiffs (collectively,
5  "Third-Party Plaintiffs") filed their Third-Party Complaint and Demand for Jury Trial (the
6  "Third-Party Complaint") against CW-TX, CW-NV and Cushman & Wakefield, Inc.
7  (collectively, the "Cushman Entities"), and numerous entities related to Credit Suisse AG
8  (collectively, the "Credit Suisse Entities"). (*See* Third-Party Complaint [Doc. 178, Case No. 12-
9  01099-LBR] dated January 25, 2013.)

10        7.     The Third-Party Complaint asserts limited causes of action against the Cushman
11  Entities: negligence-based claims and equitable indemnity and contribution claims. All of these
12  causes of action are non-core, state law claims that do not arise from or relate to the Debtors'
13  Chapter 11 case. The Cushman Entities also have filed their Motion to Dismiss the Third-Party
14  Complaint ("Motion to Dismiss") contemporaneously herewith.

15        8.     Local Rule 5011(a) requires a motion to withdraw the reference in an adversary
16  proceeding to be "served and filed on or before the date on which an answer, reply, or motion
17  under Fed. R. Bankr. P. 7012 or 7015 is first due." By filing this Motion to Withdraw Reference,
18  CW-TX and CW-NV do not consent to jurisdiction and explicitly reserve any challenges to
19  jurisdiction as set forth in the Motion to Dismiss that has been filed in these proceedings. This
20  Motion to Withdraw Reference is subject to the jurisdictional arguments raised in the Motion to
21  Dismiss and should not be construed as a general submission to the jurisdiction of the
22  Bankruptcy Court. CW-TX and CW-NV also submit, contemporaneously herewith and subject
23  to their jurisdictional challenges, their Demand for Jury Trial demanding a jury trial on all issues
24  on which they are entitled under the Seventh Amendment to the U.S. Constitution.

25        9.     CW-TX and CW-NV do not expressly consent to the entry of any final orders or
26  judgments by the Bankruptcy Court concerning the non-core, state law claims alleged in the
27  Third-Party Complaint.

28  . . .

- 4 -

1    **MOTION TO WITHDRAW REFERENCE**

2          In light of the Third-Party Complaint, the District Court should now withdraw the

3    reference of this adversary proceeding. On June 29, 2012, Defendants filed their Motion for

4    Withdrawal of Reference seeking relief from the United States District Court. (Defendants'

5    Motion for Withdrawal of Reference [Doc. 66, Case No. 12-01099-LBR] dated June 29, 2012 or

6    [Doc. 1, Case No. 12-01272-MMD-VCF] dated July 17, 2012.). After briefing, on November 7,

7    2012, the District Court denied the withdrawal of reference and held that the Bankruptcy Court

8    may issue reports and recommendations on all pre-trial matters involving the fraudulent transfer

9    claims; however, the jury trial must be conducted by the District Court. (Order [Doc. 20, Case

10   No. 12-01272-MMD-VCF] dated November 7, 2012.)

11         The facts and arguments raised in this current Motion to Withdraw Reference, as filed by

12   CW-TX and CW-NV, are distinguishable from Defendants' Motion for Withdrawal of Reference

13   and justify the withdrawal of reference at this time. In their Third-Party Complaint, the Third-

14   Party Plaintiffs have raised non-core, state law claims that do not arise in or relate to the Debtors'

15   bankruptcy case. The Third-Party Plaintiffs, on the other hand, were seeking to withdraw

16   reference on the claims that were clearly core, such as fraudulent transfer claims. (*See*

17   Defendants' Motion for Withdrawal of Reference [Doc. 66, Case No. 12-01099-LBR] dated June

18   29, 2012 or [Doc. 1, Case No. 12-01272-MMD-VCF] dated July 17, 2012.)[1] Now, the

19   proceedings have become much more complex by involving third-party, non-core, state law

20   claims between non-debtor entities that have no close nexus to the bankruptcy case. This is

21   entirely different than claims raised by the Litigation Trust for recovery of fraudulent transfers

22   and other claims against parties affiliated with the Debtors.

23         Accordingly, CW-TX and CW-NV request the withdraw of reference because it would be

24   a more efficient use of judicial resources to have the District Court hear all matters in connection

25   with the Third-Party Complaint, such as the non-core, state law claims involving private rights to

26   the extent the Cushman Entities' Motion to Dismiss is not granted in its entirety.

27

---

[1] Notably, Third-Party Plaintiffs tried to distinguish this fact at that time by arguing that those claims were not core, but were just pled that way to avoid the withdrawal of reference.

28

09911-01/1055802.doc

1    **LEGAL STANDARDS FOR WITHDRAWAL OF REFERENCE**

2    The Order denying Defendants' Motion for Withdrawal of Reference (Doc. 20, Case No.

3    12-01272-MMD-VCF) has an extensive analysis of the legal standard for withdrawal of

4    reference and does not need to be repeated here. Importantly, however, the District Court retains

5    discretion to withdraw the reference, in whole or in part, for cause shown, such as the efficient

6    use of judicial resources, delay and costs to the parties, uniformity of bankruptcy administration,

7    prevention of forum shopping and other factors. *See Security Farms v. Int'l Broth. of Teamsters,*

8    *Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1008 (9th Cir. 1997). Other relevant factors

9    include whether the case is core, or non-core, and whether a jury trial has been requested. While

10   a Bankruptcy Court may hear a non-core proceeding, it may not enter final judgment on such

11   matters absent consent of all parties and the Bankruptcy Court shall submit proposed findings of

12   fact and conclusion of law to the district court, which shall enter appropriate findings of fact and

13   conclusions of law after de novo review.

14   A bankruptcy court cannot enter a final judgment on a cause of action traditionally within

15   the judicial power of an Article III Court and does not have the constitutional authority to do so

16   with respect to private (not public) rights. *See Stern v. Marshall*, 131 S.Ct. 2594, 180 L.Ed.2d

17   475 (2011). While not specifically applicable here, the Ninth Circuit considered *Stern* as it

18   related to a Bankruptcy Court's authority to enter a final order in a fraudulent transfer action, and

19   held that, in that case, consent to the entry of such final judgment by the Bankruptcy Court may

20   be implied from the conduct in the litigation, such as where the defendant filed a proof of claim.

21   *See In re Bellingham Insurance Agency, Inc.*, 702 F.3d 553 (9th Cir. 2012). The Ninth Circuit

22   upheld the expansive view of *Stern* that a bankruptcy court cannot adjudicate cases involving

23   private rights. Additionally, in evaluating whether or not to withdraw the reference, the court

24   should consider whether, under *Stern*, the bankruptcy court is constitutionally empowered to

25   adjudicate the causes of action alleged in the underlying complaint.

26   . . .

27   . . .

28   . . .

09911-01/1055802.doc

**ARGUMENT**

**1.    CAUSE EXISTS TO WITHDRAW THE REFERENCE.**

The Third-Party Complaint raises only non-core, state law claims, none of which arise from or are related to the bankruptcy proceeding. An analysis of the factors that support withdrawing the reference follows:

**A.    Non-Core, State Law Claims of the Third-Party Complaint.**

The primary factor in deciding a motion to withdraw the reference is whether the bankruptcy court has authority to finally determine claims underlying such motion. *See Dev. Specialists, Inc. v. Akin Gump Strauss Hauer & Feld LLP*, 462 B.R. 457, 469 (S.D.N.Y. 2011). Historically, this was determined by examining the core versus non-core distinction of the claims and whether there was a timely demand for a jury trial. *Id*. Judicial efficiency is promoted by withdrawing the reference for those matters that are non-core since non-core claims are subject to de novo review. *In re Castlerock Properties*, 781 F.2d 159, 162 (9th Cir. 1986). "Efficiency is enhanced by withdrawing the reference when non-core issues predominate." *Security Farms*, 124 F.3d at 1008. "Inasmuch as a bankruptcy court's determination on non-core matters are subject to de novo review by the district court, unnecessary costs could be avoided by a single proceeding in the district court." *Castlerock*, 781 F.2d at 162. The Ninth Circuit has held that it was an abuse of discretion not to withdraw the reference when there is a non-core matter and a timely jury demand. *In re Cinematronics, Inc.*, 916 F.2d 1444, 1451 (9th Cir. 1990).

After *Stern v. Marshall*, the following additional analysis is required to determine the advantages and disadvantages of leaving the underlying complaint before the Article I court or moving it to an Article III court: (1) whether the rights being adjudicated are public rights or (2) whether the rights being adjudicated will necessarily be resolved in ruling on a creditor's proof of claim, or (3) whether the parties unanimously consent to the bankruptcy court adjudicating their claims. *Dev. Specialists*, 462 B.R. at 467.

Here, case efficiency is enhanced by withdrawing the reference because the Third-Party Complaint raises only non-core, state law claims, none of which arise from or are related to the bankruptcy proceeding and/or any proof of claim. And, these state law claims have little, if any,

- 7 -

1   commonality with the fraud-based claims made in the Original Complaint against Third-Party

2   Plaintiffs. Moreover, CW-TX and CW-NV do not consent to the entry of any appropriate orders

3   or judgments by the Bankruptcy Court, and have timely requested a jury trial to the District

4   Court.

5        Additionally, the Cushman Entities' Motion to Dismiss, incorporated herein for all

6   purposes, shows that the Third-Party Complaint should be dismissed for several other reasons,

7   including, without limitation to, lack of subject matter jurisdiction. The Bankruptcy Court lacks

8   subject matter jurisdiction, and there are no other grounds for jurisdiction in the District Court,

9   i.e., no federal question, no diversity, and no related to or arising under a bankruptcy case

10  jurisdiction. For that reason, once the reference is withdrawn, the District Court should dismiss

11  the Third-Party Complaint on the grounds set forth in the Motion to Dismiss.

12  **B.**     **Delay and Cost to the Parties.**

13       CW-TX and CW-NV do not concede that the Bankruptcy Court has any jurisdiction to

14  consider any matters alleged in the Third-Party Complaint. Nonetheless, if the Bankruptcy Court

15  hears the non-core, state law claims of the Third-Party Complaint, it may only submit proposed

16  findings of fact and conclusions of law to the district court for *de novo* review. 28 U.S.C. § 157

17  (1994); *see Security Farms*, 124 F.3d at 1008. Not only would the parties be required to engage

18  in motion practice before two different courts, this would require both courts – the Bankruptcy

19  Court, then the District Court – to arguably consider the same issues, thereby implicating

20  unnecessary costs and delay. These unnecessary costs and delay could be avoided by a single

21  proceeding in the district court. *See Security Farms*, 124 F.3d at 1009.

22  **C.**     **Uniformity of Bankruptcy Administration.**

23       The Third-Party Complaint raises only non-core, state law claims, none of which arise

24  from or are related to the bankruptcy proceeding. Thus, the consideration of these claims by the

25  Bankruptcy Court will not improve the uniformity of bankruptcy administrations. Indeed,

26  withdrawing the reference will not interfere with the bankruptcy case in which a plan was

27  confirmed years ago.

28  . . .

09911-01/1055802.doc

**D.    Prevention of Forum Shopping.**

Reducing forum shopping is one factor to be considered in determining whether to grant a motion to withdraw reference. *See Security Farms*, 124 F.3d at 1008. CW-TX and CW-NV are not forum shopping; instead, CW-TX and CW-NV contend that judicial efficiency weighs in favor of one court – the District Court – to address the non-core, state law claims of the Third-Party Complaint from beginning to end, to the extent all claims for relief against the Cushman Entities are not dismissed pursuant to their Motion to Dismiss. Moreover, confusion of unrelated issues between the bankruptcy proceeding, the Original Complaint, and the Third-Party Complaint would likely be avoided should the District Court handle all matters concerning the non-core, state law claims of the Third-Party Complaint.

**E.    Jury Trial Demand.**

CW-TX and CW-NV have a constitutional right to a jury trial. *See* U.S. Const. amend. VII; *Cinematronics*, 916 F.2d at 1451. Here, the Third-Party Complaint alleges non-core, state law claims against CW-TX and CW-NV; consequently, CW-TX and CW-NV have requested a trial by jury. (*See* Demand for Jury Trial, filed contemporaneously herewith.) Accordingly, the District Court should consider these state law claims which have little, if any, commonality with the bankruptcy proceeding and/or the fraud-based claims made in the Original Complaint against Third-Party Plaintiffs.

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

- 9 -

09911-01/1055802.doc

1

**CONCLUSION**

2 For the reasons set forth herein, CW-TX and CW-NV respectfully request that the Court

3 enter an order granting their Motion to Withdraw Reference, and grant such other and further

4 relief as may be just and proper.

5 DATED this _____8th_____ day of April, 2013.

6 **COTTON, DRIGGS, WALCH,**
**HOLLEY, WOLOSON & THOMPSON**

7

8 _____
Richard F. Holley, Esq.

9 Nevada Bar No. 3077
Ogonna M. Atamoh, Esq.

10 Nevada Bar No. 7589
400 South Fourth Street, Third Floor

11 Las Vegas, Nevada 89101

12 AND

13 Sawnie A. McEntire, Esq.
Trent L. Rosenthal, Esq.

14 David A. Walton, Esq.
Robert M. Rosen, Esq.

15 *(Pro Hac Vice Application to be filed)*
**BEIRNE, MAYNARD & PARSONS, L.L.P.**

16 1700 Pacific Avenue, Suite 4400
Dallas, Texas 75201

17

18 *Attorneys for Third-Party Defendants Cushman*
*& Wakefield of Texas, Inc., and Cushman &*

19 *Wakefield of Nevada, Inc.*

20

21

22

23

24

25

26

27

28

- 10 -

09911-01/1055802.doc